CAWOOD *v.* EARL PAIGE & CO.

1. TRIAL—PERSONAL INJURIES—EVIDENCE — PLAINTIFF'S ACCIDENT
   INSURANCE IMPROPERLY INQUIRED ABOUT.

   In an action for personal injuries defendant's counsel
   has no right to inquire whether plaintiff carries accident
   insurance.

2. APPEAL AND ERROR—ERROR MAY NOT BE PREDICATED ON REMARK
   INDUCED BY IMPROPER INQUIRY.

   Where, in an action for personal injuries, defendant's
   counsel improperly asked plaintiff if he did not carry
   accident insurance with a certain insurance company,
   error may not be predicated on the remark of plaintiff's
   counsel, induced thereby, that this was not the place to
   advertise the business of said company, although said
   remark might well have been omitted.

3. DAMAGES—PLAINTIFF MAY SHOW THAT HIS SALARY WAS JUSTI-
   FIED.

   Plaintiff, in an action for personal injuries, had a right
   to show that the business developed and handled by him
   justified the payment of his salary, although the amount
   thereof was not disputed.

4. APPEAL AND ERROR—SUPREME COURT LOATH TO DISTURB VERDICT
   OF JURY.

   Since the law imposes upon the jury the duty of award-
   ing damages for personal injuries, and upon the trial court
   the exercise of a wise discretion in his review of the
   verdict upon a motion for a new trial, the Supreme Court
   is always loath to disturb their findings, although, as
   jurors, it might be inclined to say that a less sum should
   be awarded.

5. DAMAGES — EXCESSIVE VERDICT—PERMANENT INJURIES—$22,000
   NOT EXCESSIVE.

   It cannot be said that a verdict for $22,000 for personal
   injuries is excessive, where the injuries to plaintiff's
   knee are permanent, crippling him for life, depriving him

---

[1]Damages, 17 C. J. § 228; [2]Appeal and Error, 4 C. J. § 2628;
Trial, 38 Cyc. p. 1502 (Anno); [3]Damages, 17 C. J. § 334; Trial,
38 Cyc. p. 1328; [4]Appeal and Error, 4 C. J. §§ 2846, 2847; Dam-
ages, 17 C. J. § 361; New Trial, 29 Cyc. p. 1009; [5]Damages, 17
C. J. § 443.

of many of the things which make life worth living; plaintiff has suffered great pain, has incurred expense of more than $1,000, has lost in salary $2,500, and has an expectancy of life of 27.45 years. FELLOWS and WIEST, JJ., dissenting.

Error to St. Clair; Tappan (Harvey), J. Submitted April 28, 1927. (Docket No. 155.) Decided June 24, 1927.

Case by John Cawood against Earl Paige & Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Fred L. Vandeveer* and *Leroy G. Vandeveer*, for appellant.

*Walsh, Walsh & O'Sullivan*, for appellee.

SHARPE, C. J. On July 11, 1926, plaintiff was secretary-treasurer and general manager of the Cawood Sales Company, a corporation engaged in the sale and distribution of automobiles. As an incident to the business it maintained a garage, did repair work, and sold oil and gas. Its building was located on the corner of Michigan and Grand River streets in the city of Port Huron. The corner of the building was, as counsel express it, "sheared off," leaving the usual triangular-shaped piece for a filling station. On the day above stated, plaintiff came out of a door leading into this space, and had taken but a few steps when he was struck from behind by an automobile owned by the defendant and driven by one of its employees, and severely injured. This action is brought to recover the damages he sustained thereby. The trial resulted in a verdict and judgment in his favor for $22,000, which defendant here reviews by writ of error.

While error is assigned on the court's denial of defendant's motion for a directed verdict, based on the

insufficiency of proof of defendant's negligence and the claim that plaintiff was guilty of contributory negligence, we appreciate the fairness of counsel in not discussing it in their brief or oral argument, as it is apparent that the testimony presented an issue on both questions for the consideration of the jury.

On their motion for a new trial, which was denied, and in their brief and oral argument, counsel urge that the verdict is excessive and that the amount of it can be accounted for only by a prejudice on the part of the jury, due to the admission of testimony, objected to, the conduct of the trial, and the improper argument of counsel.     The amount of the verdict justifies a careful consideration of this claim.

During the cross-examination of plaintiff by defendant's counsel, he stated that the Cawood Sales Company was under the workmen's compensation act. This answer was followed by:

"*Q.* In other words, you were subject to the compensation act of the State?

"*A.* Just what do you mean?

"*Q.* We have a law in this State that provides for compensation to persons injured while in the service of another and you elect to come under that act and you post a notice in your shop to that effect so that in the event of an employee, for instance, of the corporation receiving injury he shall be paid certain compensation such as is provided for by the terms and provisions of the act.

"*A.* Yes, our company has a policy with the Travelers, with your company.

"*Q.* So you never got any benefits of the compensation act as yet?

"*A.* I did not elect to come under that in this case.

"*Q.* You didn't?

"*A.* No, sir.

"*Q.* The Travelers Insurance Company is the same one you carry your personal accident insurance with too, is it not?

"*A.* No, it is not.

"*Q.* Are you positive of that?"

One of plaintiff's counsel here interrupted, saying:

"We object to that as immaterial.    Your Travelers Company may be doing a big business, but this is not the place to advertise it."

To which defendant's counsel replied:

"I object to that; it is highly improper."

The court then said:

"The question of his personal insurance with this company or any other company has no business in this case, and the objection is sustained."

Defendant's counsel had no right to inquire whether plaintiff was carrying accident insurance.    The remark of plaintiff's counsel might well have been omitted, but we do not think defendant can predicate error or prejudice on what occurred.

Plaintiff was permitted to testify, over objection, that at the time of his injury he had developed and was in charge of the business of two companies which did a business of approximately $600,000 a year; that he owned a third interest in them, and was paid a salary of $500 per month.    Plaintiff was permanently injured.    The trial court carefully instructed the jury as to any allowance by them for loss of earnings. While the amount received by him as salary was not disputed, we are impressed that he had a right to show that the business handled by him justified its payment.

The other claims in this respect have been examined. They do not merit discussion.    There was nothing that occurred on the trial to which objection was taken which justifies a reversal.

The meritorious question is presented by the amount of the verdict.    Defendant's counsel have collected many cases in which verdicts as large as that here rendered have been set aside or reduced, in which seem-

ingly as serious injuries were sustained as that suffered by plaintiff.

Plaintiff's permanent injury is in one of his knees. Dr. Brock E. Brush, who examined it, and the X-ray plates which had been taken, a few days before the trial, thus described it:

"The upper end of this fibula had been broken at some time. That was practically all of the bone injuries I could detect in the X-rays, but on a physical examination of the knee I found the muscles about the knee very much shrunken, either from lack of use or as a result of the injury that he had there. Then I found on examining the knee very closely that he had what we call a lateral motion to the knee, a thing entirely foreign to the knee joint, and could only come through an injury. That is, the normal function of the knee and practically the only function that the knee has is the anterior posterior motion. There is no swinging of the knee joint in and out when you walk, but the leg, when you step on it, carries you straight. It does not bow out or bow in; it is a perfectly straight leg up and down and has no side motion in walking or any other way. On examining the joint I found I could take the left leg and by holding the knee I could swing the part below the knee inward giving it a lateral motion. That is like you take a straw that is straight and you break it in the center you could swing it sideways. So that he had not only this normal motion in the knee joint which we all need in walking, but he had that lateral motion which prevents him from walking, so when he puts his weight on that leg the knee would go out this way. He could not keep his leg straight and bear the weight of his body upon that leg. When he walked or attempted to walk the leg would go out that way and that would throw him. Then too, according to the history, he has what we call a loosening of the internal semilunar cartilage, that is a cartilage that sets on the upper end of the lower bones and helps to deepen the pit that the two condyles of the upper bone sets into and when he would walk that loose cartilage would slip into the joint and when he would go to step this way it would catch and lock his knee and then he

would have to twist it awhile before he could get the natural or normal motions in the knee again. So that the injuries I saw was the breaking of this outer bone, and the head of the bone, the loosening or breaking of the external ligament that holds that bone straight and keeps it from going out, that was either broken or stretched or both, so that he had this motion and unable to walk, and then he had too the loosening of the internal semilunar cartilage that locks his knee occasionally when he walks."

He further testified:

"The wearing of a brace and all of those things associated with it and the crippling there I would say that his capacity would be injured to the extent of fifty to seventy-five per cent."

That plaintiff suffered great pain cannot be doubted. The actual expense incurred by him, due to his injury, has been more than $1,000. His loss of salary at the time of the trial was $2,500. He was 41 years of age at the time of his injury, and had an expectancy of life of 27.45 years. He will no longer be permitted to enjoy many of the things in life which it may well be said "make life worth living." He will always be crippled, and must suffer the inconvenience and humiliation incident to such physical condition.

While as jurors we might be inclined to say that a less sum should be awarded, the law imposes that duty upon the jury, and upon the trial court the exercise of a wise discretion in his review of the verdict on the motion for a new trial. We are always loath to disturb their findings, and on the record here presented must decline to do so.

The judgment is affirmed.

BIRD, SNOW, STEERE, CLARK, and MCDONALD, JJ., concurred with SHARPE, C. J.

WIEST, J. (*dissenting*). I think the verdict is excessive and for that reason there should be a new trial.

FELLOWS, J., concurred with WIEST, J.