DAVIS *v.* BELMONT CREAMERY CO.

1. TRIAL—QUESTIONS OF FACT—CREDIBILITY OF WITNESSES—JURY.
   Determination of factual questions and credibility of witnesses
   in actions at law are matters purely within the province of the
   jury.

2. SAME—RESERVED MOTION TO DIRECT VERDICT.
   Decision of reserved motion to direct verdict is but decision as on
   motion to direct verdict.

3. SAME—DIRECTED VERDICT.
   Verdict may not properly be directed where evidence presents an
   issue of fact.

4. AUTOMOBILES—PEDESTRIANS—IDENTITY OF INJURING CAR—QUES-
   TION FOR JURY—EVIDENCE.
   In action by pedestrian against owner of truck which was alleged
   to have inflicted serious personal injuries upon plaintiff after
   it made left turn from the west on to street which he was
   crossing near north side of the intersection, question as to
   whether motor vehicle which hit plaintiff was defendant's
   truck *held*, question of fact for jury under evidence presented.

5. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—MO-
   TION FOR NEW TRIAL—QUESTION FOR JURY—GREAT WEIGHT OF
   EVIDENCE.
   Granting defendant a judgment *non obstante veredicto* upon re-
   served motion to direct verdict and denial of its motion for
   new trial *held*, error where question of fact was presented for
   determination of jury but its verdict was contrary to the great
   weight of the evidence.

6. WITNESSES—EVIDENCE—MATTERS EQUALLY WITHIN KNOWLEDGE
   OF DECEASED—MASTER AND SERVANT.
   In action by pedestrian against corporation for injuries received
   by plaintiff when its truck allegedly ran into him at 1:30 in
   the morning, reception in evidence of testimony of plaintiff as
   to identity of vehicle which struck him notwithstanding de-
   fendant's driver was deceased at time of trial *held*, proper
   (3 Comp. Laws 1929, § 14219).

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted June 15, 1937. (Docket No. 110, Calendar No. 39,600.) Decided September 1, 1937.

Case by Will Davis against Belmont Creamery Company, a Michigan corporation, for personal injuries sustained when allegedly struck by a motor vehicle while crossing at a street intersection. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Both parties appeal. Reversed and new trial granted.

*Dennis H. Dwyer* (*William J. Donovan,* of counsel), for plaintiff.

*Fewlass & Frisbie* and *Don W. Van Winkle,* for defendant.

CHANDLER, J. Defendant had judgment *non obstante veredicto* upon decision of a reserved motion for a directed verdict. Both parties have appealed.

Oakland avenue in the city of Detroit runs in a northerly and southerly direction and is intersected by Owen avenue. Plaintiff testified that at about 1:30 a. m. on the 19th day of May, 1935, while proceeding to work he walked south on the east side of Oakland to a point 40 feet north of the sidewalk on the north side of Owen; that after determining that there was no approaching traffic he then attempted to cross Oakland in an angling direction to the northwest corner of Owen and Oakland; that as he reached the middle of the pavement he noticed defendant's truck approach on Owen from the west; that the truck turned north on Oakland and struck him, throwing him about 30 feet and inflicting severe injuries; that he attempted to crawl to the curb on

the west side of Oakland, reaching within five feet of his destination when he was assisted the balance of the way and was laid on the sidewalk. He then testified:

"*Q.* Now, were you conscious as you lay on the westerly sidewalk of Oakland avenue?

"*A.* No, not then.

"*Q.* Did you know what was going on?

"*A.* I did, and there was a white fellow came over to me, after I was laying down, and gave me the license number of this car.   *   *   *

"*Q.* Well, you say a white man gave you a license number?

"*A.* He did.

"*Q.* What did you do with that?

"*A.* I looked at the paper and looked at the front of the radiator of the truck and the two numbers combined together. He said, 'Put it in your pocket.'

"*Q.* What do you mean, the two numbers combined?

"*A.* The numbers he gave me on the paper and the numbers on the license tag of the truck was the same numbers."

Plaintiff also testified that at the time he compared the number on the paper with the license number, he also noted the name of the defendant company printed on the side of the truck.

The testimony of Herman Davis, in behalf of plaintiff, tended to prove that the truck turned the corner to the left at a rate of speed of 30 miles per hour and did not proceed to the middle of the intersection before making the turn. He did not see the truck strike plaintiff. He stated that the truck came to a stop on Oakland about 40 feet north of Owen and that at this time he saw plaintiff crawling in the street in front of the truck. His testimony in this

regard is confusing in that he also testified as follows:

"*Q.* And where was the truck when you saw Will Davis crawling on all fours?
"*A.* The truck was on Owen."

As opposed to this testimony, Clyde Wallace, a police officer and witness for defendant, testified that he was riding north on Oakland in a police scout car; that when about 20 feet south of Owen he saw defendant's truck stop when it came to the intersection and then proceed to make a left turn and start north on Oakland in the center of the street; that he then saw plaintiff crawling in the street and increased the speed of the scout car, fearing that the driver of the truck would not see plaintiff; that the truck stopped approximately 15 feet from plaintiff and that at no time did the truck come in contact with plaintiff, and as to the condition of the truck stated that, "It was covered with mud and there wasn't even a place where the mud was knocked off." He further testified that plaintiff was carried to the curb and an attempt to obtain his name proved futile; that the blood stains on the pavement where plaintiff was found were traced to the east where a pool of blood was found between the automobiles parked on the east side of Oakland and the north bound street car track, and that defendant's truck at no point crossed the trail of blood stains.

Two other police officers who were riding in the scout car gave testimony substantially the same as that of Wallace, all three officers positively testifying that defendant's truck never struck plaintiff and that the truck at no time was closer to plaintiff than 10 to 15 feet prior to being stopped.

The trial court denied defendant's motion for a new trial for the reason that its motion for judgment *non obstante veredicto* had been granted. The latter motion was granted on the ground that the verdict was contrary to the great weight of the evidence. In this the court was in error.

The determination of factual questions is purely within the province of the jury. The judgment *non obstante veredicto* was based upon the court's decision on a reserved motion for a directed verdict, and in determining said motion the same considerations are applicable as are pertinent to the determination of a motion for a directed verdict. A verdict cannot properly be directed for one party when an issue of fact, as in the instant case, is presented for the jury's determination. See *Yacobian* v. *Vartanian,* 221 Mich. 25; *Burt* v. *Railway Co.,* 262 Mich. 204.

But we are in agreement with the trial court's opinion that the verdict was contrary to the great weight of the evidence. No attempt has been made to set forth all the testimony in minute detail. And although, as has been stated, the jury is the trier of the facts and it is for it to determine the credibility of the witnesses, an examination of all the testimony and a comparison of plaintiff's narration of the facts, some of which appears highly improbable in view of the surrounding circumstances, with that of defendant's disinterested witnesses results in our agreement with the trial court on this question.

The motion for judgment *non obstante veredicto* should have been denied and the motion for a new trial granted.

At the time of the trial the driver of defendant's truck was deceased. Objection was made by defend-

ant to certain portions of plaintiff's testimony, claimed to have been improper as matters equally within the knowledge of the deceased and barred by 3 Comp. Laws, 1929, § 14219. Inasmuch as the same question is apt to arise upon re-trial we call attention to the decision of this court in *Waldbauer* v. *Michigan Bean Co.,* 278 Mich. 249.

The judgment is reversed, and a new trial ordered.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.