LAGALO v THE ALLIED CORPORATION

Docket No. 107996. Decided May 19, 1998. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and remanded the case for further proceedings.

Arthur Lagalo brought an action in the Bay Circuit Court against The Allied Corporation, alleging that it had been negligent in the manufacture of the master brake cylinder and had breached an implied warranty of fitness, resulting in the failure of his brakes and significant back injuries when his automobile failed to stop and crashed. The court, Lawrence M. Bielawski, J., entered judgment on a jury verdict for the plaintiff. The Court of Appeals, SAAD, P.J., and McDONALD and M. A. CHRZANOWSKI, JJ., vacated the judgment and remanded the case for a new trial, concluding that the jury's findings regarding negligence and breach of implied warranty were inconsistent (Docket No. 172606). The plaintiff seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The jury's verdict was not logically inconsistent or irreconcilable.

If there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent. In this case, it is plausible to suppose that the jury was persuaded by the defense argument regarding breach of implied warranty, but was unpersuaded by the argument concerning negligence.

Reversed and remanded.

218 Mich App 490; 554 NW2d 352 (1996) reversed.

*Mark Granzotto* and *John Walt* for the plaintiff-appellant.

*Kell & Lynch, P.C.* (by *M. V. Kell* and *Margaret A. Lynch*), and *J. Kenneth Wainwright, Jr.*, for the defendant-appellant.

PER CURIAM. After being injured in an automobile accident, the plaintiff filed suit in circuit court. A jury awarded damages, finding that the plaintiff had proven one theory of liability but not another. The Court of Appeals vacated the circuit court judgment on the ground that the jury's findings were inconsistent. We reverse the judgment of the Court of Appeals and remand the case for consideration of the other issues raised on appeal.

I

On October 21, 1985, plaintiff Arthur Lagalo was driving his 1982 diesel Chevette when he noticed a brightly illuminated dashboard warning light, indicating a brake problem. Within the hour, he took the car to a Midas repair shop, where he was advised that he needed a new master brake cylinder. Seeking a second opinion, he drove to a Muffler Man facility, where he was given the same advice. He told the Muffler Man staff to make the repair. They installed a cylinder that had been remanufactured by defendant Allied Corporation.

Mr. Lagalo says that, after the car was repaired but before he left Muffler Man, he noticed that the brake warning light appeared still to be dimly lit. The car was checked again, and he was advised not to worry. Mr. Lagalo says he had no further contact with Muffler Man until after the accident.

The owner of the Muffler Man facility has a different recollection. He says that the brakes were fine when Mr. Lagalo left the repair shop. During the evening, however, Mr. Lagalo telephoned to say that the brake light was on again. The owner told Mr. Lagalo

to bring the car back to Muffler Man. Mr. Lagalo agreed to return, but never did.

In either event, Mr. Lagalo drove the car without incident for more than a week.

In the first hours of October 31, 1985, Mr. Lagalo was driving along a Bay City street. He was wearing his seat belt, was not speeding, and had not been drinking. As he approached the STOP sign at a "T" intersection, he depressed the brake pedal. Nothing happened. He tried again, to no avail. The car rolled through the intersection, striking a concrete abutment. The defendant suffered significant back injuries.[1]

Mr. Lagalo filed a complaint and several amended complaints in circuit court. After settling or dismissing most of his claims, he went to trial in late March and early April 1992. He argued to a jury that defendant Allied Corporation had been negligent in the manufacture of the master cylinder,[2] and that Allied had breached the implied warranty of fitness.

The verdict form used in this case required the jury to answer several questions, including these:

1(a)   Was the defendant negligent?
ANSWER:   YES

1(b)   Did the defendant breach its implied warranty?
ANSWER:   NO

---

[1] At trial, the defendant sought to persuade the jury that Mr. Lagalo's back condition was the product of prior injuries and other causes unrelated to the accident. However, the jury found the injuries to have been proximately caused by the defendant's conduct.

[2] As indicated, Allied had remanufactured the master cylinder. However, it does not suggest that the applicable standard of care is different than if it had built the cylinder as an original product.

\*     \*     \*

2.     Was the defendant's negligence and/or breach of
       implied warranty a proximate cause of an injury to
       the plaintiff?
       ANSWER:   YES

The jury found present damages of $78,021.98 and
future damages totaling $2,476,786. The jury also
found that thirty-seven percent of the combined negli-
gence in this matter was attributable to Mr. Lagalo.
After calculating setoffs required by MCL 600.6306;
MSA 27A.6306, the circuit court entered a judgment
for Mr. Lagalo in the amount of $716,232.96.

Allied filed a motion for judgment notwithstanding
the verdict. Alternatively, it sought a new trial or a
remittitur. Arguing in support of its motion, Allied
characterized the jury's findings—that it had been
negligent, but that it had not breached the implied
warranty—as "inconsistent, self-contradictory, and
irreconcilable." However, the circuit court denied the
motion.

The Court of Appeals vacated the circuit court
judgment. 218 Mich App 490; 554 NW2d 352 (1996).[3]
Agreeing with Allied that the jury findings were irrec-
oncilable, the Court remanded the case for a new
trial.[4]

Mr. Lagalo has applied to this Court for leave to
appeal.

---

[3] Reh den November 19, 1996 (Docket No. 172606).

[4] In light of that holding, the Court of Appeals found it unnecessary to
decide the other issues raised on appeal by the parties.

II

In *Granger v Fruehauf Corp*, 429 Mich 1; 412 NW2d 199 (1987), a jury likewise found negligence but no breach of the implied warranty of fitness. There, too, the Court of Appeals set aside a judgment for the plaintiff on the ground that the verdicts[5] were legally inconsistent. As we reinstated the judgment of the circuit court, we explained that "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent." 429 Mich 7. We further stated:

> [I]t is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside, see, e.g., *Izzo v Weiss*, 270 Mich 372, 375; 259 NW 295 (1935), quoting from *Foster v Gaffield*, 34 Mich 356, 357 (1876), and *Gallick v Baltimore & O R Co*, 372 US 108, 119; 83 S Ct 659; 9 L Ed 2d 618 (1963). [429 Mich 9.]

The circuit court recognized in the present case its obligation to make every effort to reconcile the seemingly inconsistent verdicts. Observing that negligence and breach of implied warranty are separate causes of action with separate elements, the court explained:

> For example, in the present case, one of the elements in the breach of warranty claim required the jury to find that "the master brake cylinder was not reasonably fit for the use or purpose anticipated or reasonably foreseeable by the defendant at the time it left the defendant's control." The jury, by focusing on the literal meaning of these words,

[5] The court rules provide both for a general verdict and for special verdicts. MCR 2.512, 2.514. As in *Granger*, it is simplest to refer sometimes to the verdict and sometimes to the verdicts. In light of the court rules, we trust the meaning is clear.

could have properly concluded that *at the time the master brake cylinder left the defendant's control,* it was reasonably fit for its intended use. However, as indicated by [a mechanic's] testimony, a minimal amount of use could have rendered the cylinder unsafe. Thus, the jury could have concluded that, at the exact moment that the master brake cylinder left defendant's control, it was fit for its intended purpose. As a result, the jury could properly conclude that no breach of warranty claim existed. This does not mean, however, that defendant could not be found negligent in its manufacturing of the master brake cylinder since the evidence indicated that said cylinder became unsafe after a minimal amount of use. [Emphasis in original.]

The Court of Appeals took a different approach. In a detailed opinion, the Court closely examined the causes of action presented by Mr. Lagalo, as well as a variety of prior appellate cases discussing those theories. In the end, the Court declared itself "unable to reconcile these jury verdicts." 218 Mich App 499. With regard to the analysis offered by the circuit court, the Court of Appeals said:

We also reject plaintiff's attempt to harmonize the jury verdicts by arguing that the master cylinder could have been in good working order when it left defendant's control, but subsequently could have been rendered unsafe ten days later. This distinction is illusory. Whether an action is based on negligence or breach of implied warranty, the plaintiff must show that the defect existed at the time the product left the manufacturer. *Manzoni v Detroit Coca-Cola Bottling Co*, 363 Mich 235, 241-242; 109 NW2d 918 (1961); *Reeves v Cincinnati, Inc* [176 Mich App 181, 184; 439 NW2d 326 (1989)]. Thus, in this case, if defendant was *negligent*, then the master cylinder was defective when it left defendant's control—by definition then, defendant breached its *implied warranty*. [218 Mich App 499 (emphasis in original).]

III

The Court of Appeals opinion recites the important principles recounted in *Granger*. And it reflects a thoughtful look at the difficult distinction between negligence and breach of warranty in the context of a manufacturing defect.[6] What is missing, however, is sufficient grounding of the analysis in the particular factual context of the case at bar.

In *Granger*, it was plausible for the jury to find negligence, but not breach of warranty. A trailer[7] was sold as new equipment in 1969, and then (after being reacquired by Fruehauf) was sold again "as is" to the plaintiff's employer in 1975. In fact, the plaintiff was personally involved in his employer's decision to purchase that particular trailer. In both 1969 and 1975, the trailer obviously was the product of Fruehauf's design process, and thus a jury could find design negligence in the wake of the 1975 sale. However, *on the facts of that particular case*, the jury very reasonably could conclude that the implied warranty of fitness attached only to the 1969 sale, not to the 1975 "as is" sale to plaintiff's employer.

In the same manner, the present case requires a careful look, beyond the legal principles underlying the plaintiff's causes of action, at how those princi-

---

[6] The present case involves a claim of negligent manufacture, whereas *Granger* primarily involved a claim of negligent design.

[7] In *Granger*, the plaintiff was injured in an accident involving a high-sided, open-topped highway semitrailer. Such a trailer is used for cargo that is higher than the trailer sides, or to facilitate loading and unloading with a crane. Once loaded, the top of the trailer is often enclosed with a tarpaulin. The plaintiff was injured in a fall from the trailer after he had unrolled the tarp. He argued that the trailer was poorly designed because there was no ladder or other ready means of access to the top.

ples were argued and applied in the context of this specific case.

In closing argument, defense counsel began by talking about the medical evidence. He then talked about the brake light and the facts of the accident. Next he turned to the issue whether there had been a showing of negligence in the manufacturing process:

> There is also a theory called negligent manufacture, and under that theory it is the duty of Allied to exercise the reasonable care of any prudent manufacturer in producing this component. The—and in this regard, I really can't sum up the quality control procedures any better than [the facilities manager for Allied] did, but I would conclude that when you have 100 percent testing and you go through all the planning and procedures that they do, that you've certainly complied with the standard of care of a reasonable manufacturer. And, of course, there's not been any contradictory evidence to say that other manufacturers do it differently or better, or that what was done by Allied was somehow improper or inadequate.

After some additional comments regarding negligence and a short discussion of the fact that the master cylinder had somehow been lost in the days following the accident, defense counsel moved toward the conclusion of his argument:

> To close then, it's defendant's position there is no defect in the cylinder itself, the system failed because of problems unrelated to manufacturing and out of our control. Plaintiff was not disadvantaged, again, because neither of us had the actual component. He could have asked an engineer to comment, and he did not do so. The product, even if it malfunctioned, was fit for its anticipated and intended use because, ironically here, it is anticipated that this product will fail. *It's anticipated that at some point, whether it be 10 days or five years, that the master cylinder will fail. The product is designed for safety and it is here where*

*plaintiff was provided a warning and a 10 day safety*
*margin at which, any point in that time, he could have*
*turned around and avoided the injury.* This is all any man-
ufacturer can do. This product was certainly fit for the rea-
sons anticipated. [Emphasis supplied.]

The instructions given to the jury clearly delineated
the separate nature of the two causes of action; the
court told the jurors that there could be injury with-
out negligence[8] and that the implied warranty was
tied to the anticipated use of the product.[9] In these
respects, the argument of defense counsel and the
instructions to the jury were consistent.

Again, the teaching of *Granger* is that "[i]f there is
an interpretation of the evidence that provides a logi-
cal explanation for the findings of the jury, the ver-
dict is not inconsistent."[10] 429 Mich 7. In the present
case, defense counsel argued that there was no negli-

---

[8]    The defendant had a duty to use reasonable care at the time it
manufactured the master brake cylinder so as to eliminate unrea-
sonable risks of harm or injury which were reasonably foreseeable.

   However, the defendant had no duty to manufacture a master
brake cylinder to eliminate reasonable risks of harm or injury or
risks that were not reasonably foreseeable.

   Reasonable care means that degree of care which a reasonably
prudent manufacturer would exercise under the circumstances
which you find existed in this case. It is for you to decide, based on
the evidence, what a reasonably prudent manufacturer would do or
would not do under those circumstances.

   A failure to fulfill the duty to use reasonable care is negligence.

[9]    When I use the words "implied warranty," I mean a duty
imposed by law which requires that the manufacturer's product be
reasonably fit for the purpose and use intended or reasonably fore-
seeable by the manufacturer.

   A product is "defective" where the product is not reasonably safe
for the use intended, anticipated, or reasonably foreseeable.

[10] To implement the teaching of *Granger*, one must consider the evi-
dence in the full context of the case, including the arguments of counsel,
the instructions given by the court, and, if appropriate, the pleadings.

gence in the manufacturing process because every reasonable process-related precaution was in place. And he argued that there was no breach of implied warranty because the implied promise was not that the master cylinder would never fail, but that it would not fail without a safety margin—and for more than a week after the installation of the master cylinder Mr. Lagalo drove his car with the brake light on, failing to heed the advice to bring his car back to Muffler Man.[11]

On the record of *this* case, it is plausible to suppose that the jury was persuaded by defense counsel's argument regarding the breach of implied warranty, but was unpersuaded by his argument concerning negligence. The jury may have concluded that the implied warranty was not breached, in light of the period during which Mr. Lagalo could have obtained a second repair in safety; at the same time, the jury may have been satisfied that the failure of the product reflected a failure to manufacture the product in a

---

[11] Since a defective product can reflect negligence in the design or manufacturing process, and can also give rise to a breach of implied warranty, the two theories of liability are often seen as closely related. However, we have noted on several occasions that these indeed are separate causes of action, with different elements. *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 88-91; 273 NW2d 476 (1979); *Prentis v Yale Mfg Co,* 421 Mich 670, 692-693; 365 NW2d 176 (1984); *Granger* at 11, n 7; *Gregory v Cincinnati, Inc,* 450 Mich 1, 12; 538 NW2d 325; 47 ALR5th 877 (1995). The argument offered in this case by defense counsel well illustrates the distinction outlined in *Prentis,* where we said that "the negligence theory generally focuses on the defendant's conduct, requiring a showing that it was unreasonable, while warranty generally focuses upon the fitness of the product, irrespective of the defendant's conduct." 421 Mich 692. Sale of a defective product can breach an implied warranty, but it would not reflect negligence in the design or manufacturing process if the producer has acted reasonably at every stage. Conversely, a negligently manufactured product would not breach an implied warranty if the nature or timing of its failure were not inconsistent with the terms of the implied warranty.

reasonable manner. Accordingly, we are satisfied that the verdict rendered by the jury is not logically inconsistent or irreconcilable.[12]

For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of the other issues raised by the parties on appeal and cross appeal. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred.

---

[12] In the unique circumstances of the present case, we thus do not accept the statement by the Court of Appeals that "if defendant breached its duty of reasonable care by manufacturing a defective master cylinder that caused plaintiff's accident, then necessarily the master cylinder was not fit for its intended and anticipated use." 218 Mich App 496.