**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 24, 2001**

NORMA KELLY,

    Plaintiff-Appellee,

v                             No. 113314

BUILDERS SQUARE, INC.,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

**We granted leave in this premises liability case to determine whether the trial court erroneously granted a new trial on damages following the original jury verdict. The original jury found defendant negligent, but awarded only plaintiff's medical expenses without rendering any award for pain and suffering. The trial court, in response to a specific inquiry from the first jury during deliberations, and with the agreement of both parties, had earlier instructed**

that the jury had no duty to award any damages, even if it found defendant negligent. In response to plaintiff's motion for new trial, the trial court thereafter ordered a partial retrial on damages only to determine an appropriate award for pain and suffering. On retrial, the jury awarded plaintiff $150,000 in noneconomic damages. The Court of Appeals affirmed in an unpublished, two-to-one decision.[1] We reverse and remand to the trial court for entry of judgment on the original verdict because the trial judge had no legal basis to set it aside.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

On May 17, 1991, plaintiff Norma Kelly and her husband patronized defendant's store in Ypsilanti. As plaintiff walked down an aisle containing a stack of large boxes of electric fans, some boxes fell. At least one box struck plaintiff's head and right shoulder. Neither plaintiff nor her husband knew how or why the boxes had fallen.

Plaintiff reported pain in her right shoulder. She was transported by ambulance to a local hospital. Examination there reflected that plaintiff had full range of motion in her right shoulder. An x-ray of plaintiff's shoulder also revealed no abnormality. Plaintiff was released from the

---

[1] Unpublished opinion per curiam, issued July 31, 1998 (Docket No. 199501).

2

hospital the same day.  She later followed up with her family physician who prescribed physical therapy.

It was not until thirty months following the accident that plaintiff first began treating with Dr. Ralph Blasier, an orthopedic surgeon.  After examining plaintiff and reviewing an MRI, Dr. Blasier diagnosed a tear in the rotator cuff muscle of plaintiff's right shoulder and muscle impingement. Dr. Blasier surgically removed part of the bone to relieve the impingement.  However, he saw no evidence of a rotator cuff tear during surgery.  He testified that "common sense" suggested that the incident at defendant's store had caused plaintiff's injury.

Plaintiff testified that the operation alleviated her pain only "a little bit."  She claimed that her injury still prevented her from various activities such as driving, swimming, shopping, and crocheting.

Dr. Paul Kelly, another orthopedic surgeon, examined plaintiff for the defense.  He saw no reason to restrict any of plaintiff's activities.  He opined that it would be quite unusual for a blow to the top of the shoulder to cause a rotator cuff injury or impingement.  He stated: "I've never seen a mechanism injury to the rotator cuff as a direct result of a blow to the top of the shoulder."

After retiring to deliberate, the jury forwarded

**3**

questions: "Can we agree on negligence and offer no money? What is the minimum monetary amount . . . if there is negligence?" Plaintiff and defense counsel thereafter specifically agreed to an instruction that the jury could find negligence but not award damages and that the jury need not award any amount of damages. The court then furnished a written instruction to the jury consistent with the parties' agreement.[2]

The jury thereafter returned a verdict finding defendant negligent. The jury awarded plaintiff medical expenses totaling $10,227, but awarded nothing for noneconomic damages. Plaintiff then moved for a new trial on damages only. Relying on *Fordon v Bender*, 363 Mich 124; 108 NW2d 896 (1961), and *Mosley v Dati*, 363 Mich 690; 110 NW2d 637 (1961), she asserted that wherever a jury finds negligence and awards medical expenses, it must also award damages for pain and suffering. In its reply, the defense countered that a jury is not required to award damages for pain and suffering.

The trial court granted a new trial on damages only. The court did not mention the parties' stipulated instruction in its ruling:

---

[2] The judge who presided over the trial and granted the new trial motion was not present during deliberations when the jury sent this note. A substitute judge gave the jury the written instruction to which the parties had agreed.

4

I did follow this case. I did have the opportunity to personally observe the credibility and the demeanor of the complaining witnesses in this case. And there was extensive testimony about the damages that occurred as the result of the alleged negligence of the defendants.

* * *

Once having established that there was negligence and establishing proximate cause and accepting the validity-and we had a special verdict form as to what that $10,227 constituted, i.e., the medical expenses including surgery for the treatment of this woman, it is absolutely incongruous, it is absolutely inconsistent to then, based on that evidence, conclude there was no pain and suffering, there was no disability, there was no other "non-economic damages" that they were instructed on in the past, the present or the future.

Following retrial, a second jury awarded plaintiff $150,000 for "physical pain and suffering, mental anguish, denial of social pleasure and enjoyments and embarrassment" in the past, present, and future.

In a two-to-one decision, the Court of Appeals affirmed the trial court's decision to grant a new trial. The dissenting judge opined:

There is no legal requirement that a jury award damages simply because liability was found. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997). Indeed, the plaintiff bears the burden of proving damages, and a jury is free to accept or reject such proofs. *Id*. at 172-173. The original jury in this case had the best opportunity to understand all the issues and evidence involved, and its refusal to award noneconomic damages should have been respected. I would affirm the original jury verdict. The granting of a new trial on the issue of damages was

5

wholly gratuitous. If in fact a new trial was warranted, the entire case should have been submitted to the jury. [Slip op, p 1.]

This Court granted leave to appeal "limited to whether the trial court erred in ordering a second trial on the issue of damages." 462 Mich 861 (2000).

## II. STANDARD OF REVIEW

On appeal, we review a trial court's decision whether to grant a new trial for an abuse of discretion. *Bean v Directions Unlimited, Inc*, 462 Mich 24, 34; 609 NW2d 567 (2000); *Brown v Arnold*, 303 Mich 616, 627; 6 NW2d 914 (1942). We review de novo any questions of law that arise. *Cardinal Mooney High School v Michigan High Sch Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

## III. ANALYSIS

A. The jury's prerogative to assess pain and suffering

This Court has long recognized that the authority to measure damages for pain and suffering inheres in the jury's role as trier of fact. See, e.g., *Griggs v Saginaw & F R Co*, 196 Mich 258; 162 NW 960 (1917); *Michaels v Smith*, 240 Mich 671; 216 NW 413 (1927).

In *Brown, supra*, a jury awarded only the amount of the medical expenses to a severely injured plaintiff.[3] The

---

[3] The verdict form had not differentiated medical expenses from pain and suffering.

**6**

plaintiff sought a new trial on the ground that the verdict was grossly inadequate and against the great weight of the evidence. This Court affirmed the denial of a new trial:

> "The adequacy of amount of a verdict is also generally a matter for the jury. We do not substitute our judgment on this question unless a verdict has been secured by improper methods, prejudice, or sympathy. *Michaels v Smith*, 240 Mich 671 [216 NW 413 (1927)]. No such showing has been made, nor is the verdict so inadequate as to shock the judicial conscience. *Watrous v Conor*, 266 Mich 397 [254 NW 143 (1934)]." *Campbell v Brown*, 276 Mich 449, 454 [267 NW 877 (1936)].

> In *Sebring v Mawby*, 251 Mich 628[232 NW 194 (1930)] this court said: "The law furnishes no exact rule by which damages for pain and suffering can be measured. Their determination must necessarily be left to the good sense and sound judgment of the jury in their view of the evidence. It has frequently been said by courts and text-writers that the award of the jury will not be disturbed unless it is so great as to shock the judicial conscience or unless it was induced by something outside of the evidence, such as passion or prejudice. There is no claim of any such influence in this case. In view of the evidence, we cannot say that the verdict was excessive."

> In *Cleven v Griffin*, 298 Mich 139 [141; 298 NW 482 (1941)] we also said: "No complaint is made by appellants that the jury was not properly instructed as to the element of damages. No claim is made that the verdict was obtained by improper methods, prejudice or sympathy. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. *Watrous v Conor*, 266 Mich 397 [254 NW 143 (1934)]; *Weil v Longyear*, 263 Mich 22 [248 NW 536 (1933)]. Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. *Cawood v Earl Paige & Co*, 239 Mich 485 [214 NW 402 (1927)]. We do not usually

7

substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy. *Watrous v Conor*, *supra*, *Michaels v Smith*, 240 Mich 671 [216 NW 413 (1934)]. The verdict was within the range of the testimony and not excessive.

See, also, *Nezworski v Mazanec*, 301 Mich 43 [2 NW2d 912 (1942)].

We cannot substitute our opinion for that of the jury as to the proper amount of damages to allow plaintiff for pain and suffering. [*Brown* at 627-629.]

In a trio of cases decided between 1958 and 1961, *Weller v Mancha*, 353 Mich 189; 91 NW2d 352 (1958), *Fordon*, *supra*, and *Mosley*, *supra*, this Court ordered new trials where a jury had failed to award damages for pain and suffering. This Court did not acknowledge the *Brown* case in any of those opinions.

In *Weller*, the plaintiff sued for automobile negligence and obtained a jury verdict "in the exact amount of the out-of-pocket expenses for medical, hospital and funeral bills and damage to the automobile, [but] nothing was allowed for pain and suffering and nothing for loss of support." *Id*. at 195 (citations omitted). This Court ordered a new trial:

The jury verdict was for the exact amount of the stipulated special damages of the deceased. It is apparent that no consideration was given by the jury to the additional elements of the pain and suffering of the deceased and the future damages of the widow and minor child, and, therefore, the damages awarded to plaintiff were overwhelmingly against the evidence, and, under the evidence, grossly inadequate. [*Id*. at 195-196.]

**8**

In *Fordon*, the defendants admitted liability for damages resulting from an automobile accident.  The issue of damages was tried before a jury, leading to an award for the medical expenses and damage to the vehicle, but not for pain and suffering.  This Court reversed and remanded for a new trial, relying in part on *Weller*:

> In allowing plaintiff to recover for his special damages, the jury must necessarily have found that he suffered injuries proximately caused by defendant's negligence.  The court properly instructed the jury with respect to its duty to award such special damages in the event it found that defendants proximately caused plaintiff's injuries.  The court also properly charged that in that event plaintiff should be awarded, in addition, an "amount that will compensate him as far as money can compensate him for the pain and suffering that he has endured."  There was much disputed testimony relating to plaintiff's medical history and physical condition both prior and subsequent to the collision here involved.  Defendants sought to prove that plaintiff's injuries had been caused by other events, principally athletic and body conditioning activities in which he engaged rather extensively, and, of course, plaintiff sought to prove his claim that the injuries were caused by defendants.  The jury resolved the dispute in plaintiff's favor by its verdict, which included damages for plaintiff's medical expenses.  The jury's verdict, however, manifests a disregard of the court's quoted instruction by its failure to award damages for pain and suffering.  Once the jury resolved the causation dispute, the great weight of the evidence compelled it to award plaintiff damages for the pain and suffering which naturally followed such injuries found by the jury to have been proximately caused by defendants. [*Fordon* at 125-126.]

In *Mosley*, this Court again ordered a new trial after the jury awarded the precise amount of medical expenses resulting

**9**

from automobile negligence. This Court reviewed the evidence of pain and suffering and, relying on *Fordon*, concluded that "the great weight of the evidence preponderates in favor of a finding that plaintiff did, in fact, endure pain and suffering as a result of the injuries caused by defendants' negligence." *Mosley* at 692.

*Weller*, *Fordon*, and *Mosley* did not create a legal rule mandating pain and suffering damages whenever a jury finds negligence and awards medical expenses. Rather, those decisions analyzed the great weight of the evidence on the facts presented. Subsequent cases have emphasized the deference traditionally accorded to a jury's assessment of damages in accordance with the principles discussed in *Brown*, *supra*. See, e.g., *A'eno v Lowry*, 367 Mich 657; 116 NW2d 730 (1962); *Moore v Spangler*, 401 Mich 360; 258 NW2d 34 (1977).

## B. CODIFICATION OF BASES FOR GRANTING A NEW TRIAL

The grounds for granting a new trial, including a verdict contrary to the great weight of the evidence, are now codified at MCR 2.611(A)(1). The court rule provides the only bases upon which a jury verdict may be set aside. Thus, *Weller*, *Fordon*, and *Mosley* are no longer relevant. A jury's award of medical expenses that does not include damages for pain and suffering does not entitle a plaintiff to a new trial unless the movant proves one of the grounds articulated in the court

**10**

rule.

Plaintiff has not shown why she was entitled to a new trial under the court rule. She instead relies on *Fordon* and *Mosley*.

Similarly, the trial court did not cite any basis in the court rule for setting aside the original jury verdict. It merely stated that the failure to award pain and suffering damages was "inconsistent" and "incongruous." MCR 2.611(A)(1) does not identify inconsistency or incongruity as a ground for granting a new trial. The court abused its discretion by granting a new trial without finding a basis in the court rule.

We reject, in any event, the principle that a jury behaves inconsistently when it awards medical expenses, but nothing for pain and suffering. Plaintiff had the burden to prove each element of her case, including every item of claimed damages. Medical expenses and pain and suffering are distinct categories of damages. Each category may have a distinct evidentiary basis. For example, a claimant's own testimony about her subjective experiences is generally offered to prove pain and suffering. When a jury believes that a plaintiff has suffered an injury and incurred medical expenses, it may still assess separately any distinct proofs regarding pain and suffering.

**11**

In short, the jury is free to credit or discredit any testimony. It may evaluate the evidence on pain and suffering differently from the proof of other damages. No legal principle requires the jury to award one item of damages merely because it has awarded another item.

Instead of finding a basis in the court rule for granting a new trial, the trial court and Court of Appeals majority expressed views regarding the credibility of witnesses. Assessing credibility and weighing testimony is the prerogative of the trier of fact. The trial court therefore abused its discretion in granting a new trial.

## IV. RESPONSE TO THE DISSENT

The dissent opines that the great weight of the evidence—a basis for setting aside a jury verdict under our current rule—justified the grant of a new trial in this case. But the trial court did not review the evidence under that standard;[4] thus, there is no exercise of discretion by the

---

[4] Contrary to the dissent's assertion, the record does not reflect that the trial court applied the great weight of the evidence standard. Because *Weller*, *Fordon*, and *Mosley* referred to the great weight of the evidence, the dissent speculates that the trial court here applied that standard. This rationalization of the trial court's decision has no basis in the court's actual ruling. Moreover, *Weller*, *Fordon*, and *Mosley* were decided on other bases in addition to the great weight of the evidence, thus further undermining the dissent's chain of reasoning.

**12**

trial court under that standard for us to review.[5]

The dissent also states that our application of MCR 2.611(A)(1) "puts us out of step with the position embraced by virtually every other state." Slip op at 1. We are not "out of step" with other states when we reinstate a jury verdict that the trial court lacked a legal basis to set aside. We have satisfied our duty to apply our court rule codifying the bases for granting a new trial.

Next, the dissent observes that a jury verdict may be set aside where it is "contrary to law." MCR 2.611(A)(1)(e). The dissent views an inconsistent or incongruent verdict as "contrary to law." Slip op at 2, n 2. We need not construe that phrase because the trial court did not employ the dissent's interpretation as a basis for granting a new trial. The court did not find that the verdict was "contrary to law."

But even if a jury verdict may be set aside on the basis of inconsistency under our current rule, the trial court did not apply the standard in existing case law for reviewing inconsistent verdicts. If a verdict *appears* inconsistent, a

---

[5] The dissent states that our description of the underlying facts and procedural history, "impliedly casts" doubt on plaintiff's credibility. We reject this characterization. The original jury in this case resolved credibility issues when it declined to award damages for pain and suffering. We base our decision solely on the trial court's failure to find a basis in the governing court rule to upset the jury's verdict.

13

court must "make every effort to reconcile the seemingly inconsistent verdicts." *Bean, supra* at 31, quoting *Lagalo v Allied Corp*, 457 Mich 278, 282; 577 NW2d 462 (1998). A new trial may not be granted if an interpretation of the evidence logically explains the jury's findings. *Id.* The trial court did not apply this standard.

## V. CONCLUSION

A court may grant a new trial following a jury verdict only for one of the reasons stated in MCR 2.611(A)(1). On the facts presented here, the trial judge lacked a legal basis to grant a new trial. Accordingly, we reverse the Court of Appeals and remand to the trial court for entry of a judgment consistent with the original jury verdict.

TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, C.J.

WEAVER, J., concurred in the result only.

14

S T A T E   O F   M I C H I G A N

SUPREME COURT

NORMA KELLY,

    Plaintiff-Appellee,

v                                       No. 113314

BUILDERS SQUARE, INC.,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

Today the majority ignores the command of settled Michigan precedent and puts us out of step with the position embraced by virtually every other state.[1] Because the initial jury rendered a flawed verdict, it was altogether appropriate for the trial court to grant a partial new trial. No error is alleged with respect to the second jury's verdict. Accordingly, I would sustain it and affirm the opinion of the Court of Appeals.

---

[1] See *Anno: Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, But Failing to Award Damages for Pain and Suffering*, 55 ALR4th, pp 186-232.

Where a verdict in a civil case is inconsistent, self-contradictory or incongruent, it must be set aside and a new trial granted. *Harrington v Velat*, 395 Mich 359, 360; 235 NW2d 357 (1975), quoting 66 CJS, New Trial, § 66, pp 197-198. See also *Bias v Asbury*, 369 Mich 378; 120 NW2d 233 (1963); 58 Am Jur 2d, New Trial, § 129, pp 335-336; *Bartholomew v Walsh*, 191 Mich 252, 261-262; 157 NW 575 (1916). The first jury in this case rendered such a verdict.[2]

Also, it is without question that Michigan law requires a new trial where the verdict is against the great weight of the evidence. See MCR 2.611(A)(1)(e). Longstanding precedent establishes that a personal injury jury verdict that awards damages for medical expenses, yet awards nothing for pain and suffering is against the great weight of the evidence. *Weller v Mancha*, 353 Mich 189; 91 NW2d 352 (1958); *Fordon v Bender*, 363 Mich 124; 108 NW2d 896 (1961); *Mosley v Dati*, 363 Mich 690; 110 NW2d 637 (1961). In this case, as in *Fordon:*

---

[2] The majority submits that inconsistent and incongruent verdicts are invalid grounds for granting a new trial because those very words do not appear in MCR 2.611. I find this approach unduly rigid. Under Michigan law, an inconsistent verdict means a legally irreconcilable one. Hence, a legally irreconcilable verdict is contrary to law. MCR 2.611(A)(1)(e) provides that a verdict contrary to law is grounds for a new trial.

The jury resolved the dispute in plaintiff's favor by its verdict, which included damages for plaintiff's medical expenses. The jury's verdict, however, manifests a disregard of the court's quoted instruction by its failure to award damages for pain and suffering. *Once the jury resolved the causation dispute, the great weight of the evidence compelled it to award plaintiff damages for the pain and suffering which naturally followed such injuries found by the jury to have been proximately caused by defendants.* [*Id.* at 125-126 (emphasis added).]

In this case, the court instructed the first jury on the elements of damages that it was required to consider, pursuant to SJI2d 50.01, 50.02. That instruction provided, in part:

You should include each of the following elements of damage which you decide has been sustained by plaintiff to the present time:

a. physical pain and suffering

b. mental anguish . . . .

The jury disregarded these instructions. It found defendant liable and awarded damages that matched the exact amount of plaintiff's medical expenses. Its award of actual damages, coupled with the nature of plaintiff's injuries necessitating surgery, compels the conclusion that the jury found injuries that included pain and suffering. Its verdict was both inconsistent with the judge's instructions and contrary to the great weight of the evidence under the clear holdings of *Weller, Fordon,* and *Mosley*.

The cases relied on by the majority do not support its conclusion. They leave undisturbed the rule that a verdict

3

against the great weight of the evidence requires a new trial. Instead, they stand for the general proposition that the court should not substitute its judgment for that of the jury on factual questions. In fact, the reasoning they employ appears to support, not conflict with, the trial judge's decision in this case.

*Brown*,[3] the case relied on most heavily by the majority, is distinguishable from this case. The distinction lies in the fact that the verdict in *Brown* was not for actual damages, alone, but exceeded actual damages by $9.50. There was evidence that the excess was the amount of the plaintiff's ambulance fare, but there was no evidence that the plaintiff was charged for ambulance services.

Moreover, there was evidence in *Brown* that the defendant paid for various of the plaintiff's expenses during the two months after her release from the hospital. The Court considered this evidence and decided that the jury may have believed this adequate compensation for present pain and suffering and thus awarded only a minuscule additional amount. Additionally, the Court pointed to other factors suggesting that the jury actually had followed its instructions that it consider awarding compensatory damages.

---

[3] *Brown v Arnold*, 303 Mich 616; 6 NW2d 914 (1942).

It concluded that the jury may have determined a higher award to be unjustified by the proofs.  The judge observed that the lower award could have been derived from the paucity of evidence showing that the plaintiff's pain and suffering was permanent.  Thus, the *Brown* Court denied a new trial, refusing to speculate on the purpose behind the jury's decision to award a small amount of excess compensation.

By contrast, in this case, plaintiff received nothing whatsoever beyond her medical expenses.  Hence, there was nothing about which the trial court could speculate. Clearly, no damages for pain and suffering were awarded.

## II

Defendant insists that the issue before us centers on the trial judge's response to the question submitted by the first jury shortly before it rendered its decision.[4]  The jury's question was whether damages must be awarded upon a finding of negligence. The response was: a jury *may* find negligence and award no damages.  It was legally correct.[5] If, for example,

---

[4] The majority notes that all parties agreed to the substance of the judge's written response to the jury's query. I find this fact unremarkable, given the propriety of, and the lack of grounds for objection to, the judge's answer.

[5] The majority fails to acknowledge that the jury found more than mere "negligence," given its decision to award actual damages. It is blackletter law that plaintiff would not be entitled to any award at all if defendant's "negligence" did not proximately cause her injuries. Therefore, we must
(continued...)

the jury found that the defendant's acts were negligent, but not the proximate cause of the plaintiff's injuries, it would find no damages. It could make the same finding in the presence of negligence and proximate cause where no damages had been proven. Here, because the jury failed to award compensatory damages despite clear instructions and unrebutted, credible evidence[6] of pain and suffering, the

---

[5] (...continued)
conclude that the first jury found proximate cause as well as negligence. This resulted in *liability*.

Indeed, there is a distinction between the concept of negligence in the broadest sense, encompassing all four traditional elements, and negligence in the sense that it is commonly used. In common usage, "negligence" describes a mere breach of duty, a notion entirely severable from the elements of proximate cause and damages. As *Prosser & Keeton, Torts* (5th ed), §30, pp 164-165, observes:

> A failure on the person's part to conform to the standard required: a *breach of the duty*. These two elements go to make up what the courts usually have called negligence, but the term quite frequently is applied to the second alone. Thus it may be said that the *defendant was negligent, but is not liable* because he was under no duty to the plaintiff not to be. [Emphasis added.]

See also *Davis v Thornton*, 384 Mich 138, 146; 180 NW 2d 11 (1970) (finding that once negligence is found, "[t]he jury must then bridge the gap between the plaintiff's injuries and the defendant's negligence. This is the determination of cause and the remoteness of effect.").

[6] Had the jury not found plaintiff credible, it would not have awarded her actual damages. Having found an injury caused by defendant's negligence and an injury and surgery that naturally occasion pain, it was improper for the jury to avoid some award of noneconomic damages. That is the law of our
(continued...)

6

verdict was against the great weight of the evidence.

III

The majority contends that later revision of the bases for granting new trials resulted in the de facto overruling of *Weller, Fordon,* and *Mosley*. It postulates that the decisions "are no longer relevant" because MCR 2.611(A) alone provides the basis for awarding a jury verdict. I disagree.

The court rule allows for a new trial where a verdict is contrary to the great weight of the evidence. *Weller, Fordon*, and *Mosley* identify factual instances where a court found a verdict was contrary to the great weight of the evidence. As the majority indicates, *Weller* provides:

> It is apparent that no consideration was given by the jury to the additional elements of the pain and suffering of the deceased . . . and, therefore, the damages awarded to plaintiff were overwhelmingly against the evidence. . . . [*Weller, supra* at 195-196.]

MCR 2.611(A) represents a codification of the principles in *Weller*, *Fordon,* and *Mosley*. It is consistent with those opinions and does not in the least nullify them.

The jury verdict in this case was virtually identical in form to those generated in *Weller, Fordon,* and *Mosley*. Plaintiff justifiably relied on the principles found in those

---

[6] (...continued)
state as set forth in *Weller, Fordon*, and *Mosley*, and the law that should govern our analysis of this case.

7

cases for valid reasoning to demonstrate that the first jury returned a verdict contrary to the great weight of the evidence. Since the judge's decision to award a partial new trial on damages was consistent with those cases and with the court rule, it was not an abuse of discretion.[7]

IV

The majority concludes that the trial court abused its discretion by failing to review the evidence for a violation of the court rule. The opinion suggests that the judge improperly substituted his opinion for that of the jury when he "expressed views regarding the credibility of witnesses." Slip op at 13. However, the majority does its own indirect assessment of witness credibility when referencing selective portions of the testimony that reflect plaintiff's case as too weak to warrant a new trial. Slip op at 2-3. Thus, the majority *states* that its decision is based on the court rule. However, it *intimates* that defendant produced sufficient evidence to avoid a finding that the verdict went against the

_____

[7] The majority contends that the trial court abused its discretion by not granting a new trial on one of the bases codified in MCR 2.611. The trial court based its ruling on the principles found in the *Weller* trio of cases. Those cases involved decisions granting new trials because the verdict was against the great weight of the evidence. Such verdicts are grounds for a new trial under MCR 2.611(A)(1)(e). The majority's statement to the contrary, this is the standard under which the trial court reviewed the evidence in this case.

8

great weight of the evidence.  It stresses that the question centered on credibility, something exclusively in the domain of the trier of fact.  By so casting the evidence and analysis, the majority avoids showing appropriate deference to the trial judge's fitting efforts to rule on the legality of the verdict.

As our Court of Appeals has observed:

> [T]he standard used in this case is different than that involved in reviewing a summary disposition, directed verdict, or judgment notwithstanding the verdict, and *we are not of the view that the existence of any competent evidence to support the verdict compels reversal of the grant of a new trial.* [*Arrington v Detroit Osteopathic Hosp* (*On Remand*), 196 Mich App 544, 560-561; 493 NW2d 492 (1992) (emphasis added).][8]

Reflecting on the struggle to give appropriate deference to the trial court's judgment and respect for the collective wisdom of the jury, one legal scholar has written:

> If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial. [Wright, Law of Federal Courts (4th ed), § 95, p 635.]

---

[8] See also *Davis v Belmont Creamery Co*, 281 Mich 165, 169; 274 NW 749 (1937) (finding a jury verdict to be against the great weight of the evidence despite the existence of a question of fact sufficient to avoid a judgment notwithstanding the verdict); Dean & Longhofer, Michigan Court Rules Practice, New Trials § 2611.7 (West, 1998) ("Between these extremes lies an area in which the proof begins to weigh heavily against the verdict, where the trial judge's discretion must be accepted as the best guide to whether fairness requires a new trial.").

I believe the proper standard to apply to this case allows considerable deference to the trial judge's decision while, at the same time, respecting the collective wisdom of the jury. That deference was given by Michigan courts in *Davis* and *Arrington* and was described by Professor Wright.

Without question, the mere fact that defendant produced an expert witness does not foreclose the possibility that the first verdict was contrary to the great weight of the evidence. Consider the substance of the testimony from defendant's only witness, Dr. Kelly. The defense's physician acknowledged on cross-examination that he had not performed a shoulder surgery of the type at issue in "five or six years." He admitted that only forty percent of his professional time is spent dealing with patients directly.

In evaluating plaintiff, Dr. Kelly spent only twenty to twenty-five minutes. He declined to review her medical records or operative notes from plaintiff's surgery; he failed to review her physical therapy records; he declined to order orthopedic tests, such as an MRI or an arthrogram; he had no knowledge of the prior tests that had been performed on the patient.

Hence, when the majority references select portions of Dr. Kelly's testimony it misleads the reader with the implication that they constitute a basis for reversal of the

lower court's grant of new trial. Such a conclusion is unsubstantiated, given the majority's disregard for the need, when reviewing the grant of a new trial, to balance the deference due the jury with *that due the judge*. In my opinion, the testimony of Dr. Kelly, standing alone, is insufficient to support a conclusion that the trial judge abused his discretion in granting a new trial.

The majority's "underlying facts" section cites Dr. Blasier's inability to locate the tear in plaintiff's rotator cuff during surgery. It implies that the nondiscovery lends support to its finding that the trial judge erred. The same section also notes that X-rays failed to show evidence of the torn rotator cuff. This is a lopsided version of the evidence.

As Dr. Blasier explained in his testimony, and Dr. Kelly acknowledged, the tear suffered by plaintiff would not have been visible from the vantage point of the surgeon during surgery. This is because it occurred on the underside of the rotator cuff muscle and would have been obscured from the surgeon's view by the top of the muscle. Moreover, Dr. Kelly acknowledged on cross-examination that X-rays do not show partial muscle tears or impingements of the kind complained of by plaintiff. Therefore, the doubt that the majority impliedly casts on plaintiff's credibility by suggesting that her injuries, if real, would have appeared on an X-ray is

11

unavailing.[9]

Indeed, the evidence of pain and suffering is undisputed and unimpeached. Dr. Kelly, the only defense witness, addressed the subject of pain three times, each time only to acknowledge its existence. Plaintiff's witnesses, on the other hand, testified in great detail about the pain Ms. Kelly endured. Dr. Blasier stated that each time plaintiff merely raised her arm, she experienced pain. There was testimony from Donald Kuck, plaintiff's physical therapist, Ernest Kelly, plaintiff's husband, and plaintiff, herself. Each presented the jury with a detailed description of the nature and severity of the pain.

Therefore, I disagree that the trial judge erroneously granted a new trial, and I reject the proposition that the trial court reviewed the evidence under an inapplicable standard. Inasmuch as the first jury failed to consider an award of noneconomic damages, its verdict was properly found to be contrary to the great weight of the evidence. The testimony of a lone defense witness does not render the trial court's finding unreasonable. Rather, the great weight of the

---

[9] The record reflects that MRI tests, viewed by medical professionals as the most accurate means of diagnosing and identifying partial muscle tears, showed plaintiff's torn muscle before and after surgery. Additionally, Dr. Blasier testified that, once he injected dye into plaintiff's shoulder muscle, he was able to view the tear in an X-ray.

12

evidence easily could have been found to militate against the first jury verdict, notwithstanding the brief testimony offered by Dr. Kelly. There was no abuse of discretion.

V

I agree with the majority that "the jury is free to credit or discredit any testimony" offered at trial. Slip op at 12. However, the jury may not disregard or misapply clear instructions from the court. In this case, the jury was instructed to include in its verdict "elements of damages" for "physical pain and suffering" as well as "mental anguish." It neglected to do so.

The settled law of our state requires an award of noneconomic damages where a jury finds actual damages that *necessarily* involve pain and suffering. A verdict that fails to consider these aspects is contrary to the great weight of the evidence. Such a verdict was rendered in this case. That fact alone provides a sufficient basis to affirm the trial judge's decision to award plaintiff a new trial.

The majority's finding that the trial court abused its discretion by not citing one of the bases in MCR 2.611 as support for its decision is in error. The court rule codifies the great weight of the evidence standard applied in the *Weller* trio of cases. The trial court *did* review the evidence under a great weight of the evidence standard. That is, after

13

all, the standard for which the *Weller* cases are known.

The evidence of plaintiff's pain and suffering in this case was unrebutted and unimpeached. The only witness testifying against plaintiff was a physician who acknowledged that plaintiff had experienced rotator cuff pain. Even if defendant's expert had denied the pain, denial of the motion for new trial would have been unjustified, given the quality and quantity of the evidence of plaintiff's pain.

Thus, if a factual dispute existed, as suggested by the majority's "underlying facts and procedural history" section, it is of no consequence. It could not render the trial judge's decision an abuse of discretion. Accordingly, the trial court's decision to grant a partial new trial was correct. The Court of Appeals decision upholding the second jury's verdict should be affirmed.

CAVANAGH, J., concurred with KELLY, J.

14