BEAN v DIRECTIONS UNLIMITED, INC

Docket No. 114099. Decided May 2, 2000. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

Patricia Bean, as guardian and conservator for Heather Bean, a developmentally disabled person, brought an action in the Houghton Circuit Court against Directions Unlimited, Inc. The plaintiff alleged that Directions Unlimited was liable for the fact that her daughter had been sexually victimized at a drop-in center it operated for persons who are recovering from emotional or mental health problems, including alcohol or drug addiction. The court, Garfield W. Hood, J., entered judgment on a jury verdict for the defendant. The Court of Appeals, Hood and Gribbs, JJ. (Saad, P.J., dissenting), reversed and remanded for a new trial in an unpublished opinion per curiam (Docket No. 205482). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Justices Taylor, Corrigan, Young, and Markman, the Supreme Court held:

The misconduct on the part of the part-time worker alleged to have victimized Ms. Bean did not come through any exercise of authority over her. The evidence offered was sufficient to have allowed the jury to conclude that his actions with Ms. Bean were not the product of the employment relationship. Although the jury found that Directions Unlimited had been negligent in hiring and supervising the part-time worker, the negligent hiring and supervision was not a proximate cause of the harm suffered by Ms. Bean. The jury's findings have support in the record, and the Court of Appeals erred by substituting its own view of the proofs.

Chief Justice Weaver concurred in the result only.

Reversed.

Justice Kelly, joined by Justice Cavanagh, dissenting, stated that the defendant's application fails to establish that the Court of Appeals order was clearly erroneous and will cause material injustice. The Court relied on undisputed facts presented at trial, properly exposing a natural and continuous sequence, unbroken by new and independent causes, beginning with the defendant's negligence

and ending with the sexual abuse of the victim. Its reversal and remand should be allowed to stand.

*Tercha & Daavettila* (by *Robert T. Daavettila*) for the plaintiff-appellee.

*Cardelli Hebert, P.C.* (by *Deborah A. Hebert*), for the defendant-appellant.

PER CURIAM. The plaintiff alleged under several theories that the defendant was liable for the fact that her daughter had been sexually victimized. A jury made findings, some of which were favorable to the plaintiff. However, on the basis of the jury's other findings, the circuit court entered judgment for the defendant. The Court of Appeals reversed, and remanded for a new trial. We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

Directions Unlimited, Inc., operates a drop-in center in Hancock. Directions Unlimited is wholly owned by its members, and membership is "limited to persons who are 18 years of age or older and who have experienced, and are working at recovery from an emotional or mental health problem[], including alcohol or drug addiction." Directions Unlimited is run by a board of directors selected from among the members, and is served by an executive director and sundry part-time employees, who also were members.

Among the members were James Koivu, Gerald Flagle, and Heather Bean. Each was an adult whose background included the requisite mental or emo-

tional problems, or chemical addiction.[1] Further, each had been a member before being hired as an employee, and each remained a member after the events that gave rise to this suit. Throughout the events giving rise to this suit, Ms. Bean was a legal adult without conservator or guardian.

Mr. Koivu was executive director. In that capacity he hired Mr. Flagle and Ms. Bean to work as part-time employees. At the time of hire, Mr. Koivu did not investigate Mr. Flagle's background.[2] Mr. Flagle's job did not include any supervision of Ms. Bean.

---

[1] Mr. Koivu was a recovering alcoholic, who had an unspecified mental health problem, and a prior felony conviction. At his deposition, Mr. Koivu explained that he had experienced depression, and that the conviction was for felonious assault ("I was crazy drunk and went after a man who was selling drugs to my children"). Mr. Flagle did not testify at trial and his mental condition was not known to Mr. Koivu. However, Mr. Koivu offered the lay opinion that Mr. Flagle "had some problems with insecurity," "was paranoid at times," and sometimes was verbally intimidating to other members. Ms. Bean is developmentally disabled, with an I.Q. of 61, as measured on the Wechsler Adult Intelligence Scale.

[2] Mr. Koivu's testimony at trial was generally consistent with, and would have allowed the jury to infer the same content as one finds in, this somewhat more elaborated explanation given at the time of his deposition:

*Q.* The Drop-In Center, would it be a fair characterization to say that the—the premise upon what [sic] this Center is created for was forgiveness for past indiscretions.

*A.* Oh, yeah.

\*     \*     \*

*Q.* Did Copper Country [Mental Health Department] require you, under any sort of provisions, to provide for record checks of any of the members of Directions Unlimited?

*A.* Definitely not.

*Q.* And did Directions Unlimited have any sort of a rule requiring that?

*A.* Checking—What are you asking?

*Q.* Checking the past criminal history?

*A.* No.

After hiring Mr. Flagle, Mr. Koivu learned that his past included a conviction for criminal sexual conduct involving a woman of limited mental abilities. Mr. Koivu spoke to the woman and to her fiancé, and confronted Mr. Flagle, who told Mr. Koivu that he was receiving counseling. Mr. Koivu had known Mr. Flagle for several years, and this conversation satisfied him that further action was not required.

Mr. Flagle possessed a key to the drop-in center. About two years after learning of Mr. Flagle's prior conviction, Mr. Koivu discovered Ms. Bean and him in the center together at a time when it was not open. He told them that this was improper. When he again found Mr. Flagle at the center during hours when it was not open, he fired Mr. Flagle.

Mr. Koivu later heard from another member, who suspected that Mr. Flagle had been having sexual relations with Ms. Bean. Mr. Koivu asked Mr. Flagle, who was still a member and was still attending the center. He denied such improper behavior. However, when Mr. Koivu asked Ms. Bean, she admitted that she had been sexually active with Mr. Flagle.[3] That day, Mr.

---

Q. Or . . .

A. No.

Q. Or researching at all into past indiscretions by members?

A. No.

Q. Would that have been contrary to the—the tenets on which this organization was founded?

A. It certainly would be.

[3] At trial, Ms. Bean testified that she was sexually penetrated on ten occasions. However, her testimony also included passages that were less clear. Here is an example:

Q. Now Heather, we're interested in knowing whether or not you recall ever having intercourse, sexual intercourse between yourself and Mr. Flagle. Do you remember ever having sexual intercourse?

Koivu drove to the home of Ms. Bean's parents, to tell
them what he had been told.[4]

II

Ms. Bean's mother was appointed guardian, and
filed the present suit against Directions Unlimited.[5] In
her complaint, she alleged negligent hiring and super-
vision of Mr. Flagle. She also alleged that Mr. Flagle
had committed assault, battery, and criminal sexual
conduct for which Directions Unlimited was responsi-
ble under the principle of respondeat superior. In an
amended complaint, the plaintiff added an allegation
of sexual harassment.

After the circuit court denied the defendant's
motion for summary disposition, the case was tried to
a jury.[6] At the conclusion of the proceedings, the jury
returned this verdict:

---

*A.* Do I ever remember?

*Q.* Yes.

*A.* The only place I can think of, I remember the drop-in center.

*Q.* And you're certain you had sexual intercourse with him?

*A.* That's the only place I think I can remember, yeah.

*Q.* And you know what that means?

*A.* Little bit.

*Q.* What do you think it means?

*A.* Just bug—guys bugging, asking for sex.

*Q.* Do you know what it means other than that?

*A.* No, I don't.

---

[4] Mr. Koivu testified that he contacted Ms. Bean's parents because he
had been told they were her legal guardians. He further testified that, had
he known that there was no guardianship at that time, he would not have
contacted them.

[5] Mr. Flagle apparently had left the state, and the plaintiff did not name
him as a defendant.

[6] At trial, the circuit court also denied the defendant's motion for
directed verdict.

1. Was Defendant, Directions Unlimited, Inc., negligent in its hiring and supervision of Gerald Flagle as claimed by Plaintiff? YES

If your answer is "no" do not answer Question No 2 and proceed to Question No 3. If your answer is "yes" proceed to Question No 2.

2. Was the negligent hiring and supervision of Gerald Flagle a proximate cause of Plaintiff's damages? NO

3. Was the conduct between Gerald Flagle and Heather Bean sexual harassment as defined by the Jury Instructions? YES

4. Did the Defendant's employee, Gerald Flagle wilfully and intentionally touch Heather Bean either without her consent or while she was mentally incapacitated or mentally incapable of giving consent? YES

5. If your answer to Question No 4 was yes, was the touching accomplished by Defendant's employee, Gerald Flagle, through the exercise of authority given to the employee by the Defendant? NO

6. Did Plaintiff, Heather Bean, sustain injury or damage? NO

If your answer is "no" do not answer any further questions. If your answer is "yes" proceed to Question No 7.

7. What is the total amount of Plaintiff, Heather Bean's damages? $0

On the basis of that verdict, the circuit court entered a judgment in favor of Directions Unlimited. Later, the court denied the plaintiff's motion for new trial or, alternatively, for additur.

Over the dissent of Judge SAAD, the Court of Appeals reversed and remanded for a new trial,[7] which apparently is to be limited to the allegations

---

[7] Unpublished opinion per curiam, issued November 20, 1998, reh den January 22, 1999 (Docket No. 205482).

concerning negligence.[8] The majority said that proximate cause was the element in dispute and that "[t]he overwhelming weight of the evidence suggests that it was Flagle's status as an employee, and his possession of keys to the facility, that created the opportunity for him to engage in sexual activity with Heather."

With regard to the allegations of assault, battery, and CSC, the majority upheld the jury's finding that Mr. Flagle's sexual touching of Ms. Bean was not accomplished through the exercise of authority given to Mr. Flagle by Directions Unlimited:

> Under the doctrine of respondeat superior, defendant would not be liable for torts intentionally committed by Flagle if they were beyond the scope of his master's business. [*Bradley v Stevens*, 329 Mich 556, 562; 46 NW2d 382 (1951).] Although Flagle's sexual acts with Heather occurred on defendant's premises, the incidents occurred before operating hours. Defendant created no necessity for Flagle to be in the building before hours, and derived no benefit from his presence. Flagle's presence at the drop-in center was never condoned and was finally the reason for his discharge. Based on the evidence, the jury's finding that Flagle's touching of Heather was not accomplished through the exercise of authority given to Flagle by defendant was not against the great weight of the evidence, and the trial court did not abuse its discretion in denying plaintiff's motion for a new trial on this ground.

---

[8] As indicated in the text, the Court of Appeals denied a new trial with regard to the allegations that were premised on the doctrine of respondeat superior. The Court of Appeals did not directly address the jury's finding with regard to sexual harassment, but we infer from the Court's opinion that there is to be no retrial on that aspect of the case, either. The parties do not appeal the sexual harassment claim. Accordingly, we confine our analysis to the direct negligence claim.

Judge SAAD filed a brief dissent, in which he simply stated:

> For the reasons stated by the majority in sustaining the trial court's decision not to grant a new trial on the claim regarding "Flagle's touching of Heather," I respectfully dissent from its decision to remand this matter for a new trial.

Directions Unlimited has applied to this Court for leave to appeal.

III

We agree with Judge SAAD. While Mr. Flagle and Ms. Bean were fellow employees, they also were fellow members and owners of defendant Directions Unlimited. Viewing the proofs in the light most favorable to the defendant (in whose favor the circuit court entered judgment), the misconduct on the part of Mr. Flagle did not come through any exercise of authority over Ms. Bean. Similarly, the evidence in this case would have allowed the jury to conclude that Mr. Flagle's actions with Ms. Bean were not the product of the employment relationship.

Though the parties do not approach the case in this manner, we are reminded of the principles stated in *Granger v Fruehauf Corp*, 429 Mich 1; 412 NW2d 199 (1987), and *Lagalo v Allied Corp*, 457 Mich 278; 577 NW2d 462 (1998). A jury's verdict is to be upheld, even if it is arguably inconsistent, "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury." 429 Mich 7. In deciding whether to grant a new trial, a circuit court must "make every effort to reconcile the seemingly inconsistent verdicts." 457 Mich 282. Further, such an effort "requires a careful look, beyond the

legal principles underlying the plaintiff's causes of action, at how those principles were argued and applied in the context of this specific case." 457 Mich 284-285.

In the present case, the jury found that Directions Unlimited had been negligent in hiring and supervising Mr. Flagle, but that the negligent hiring and supervision was not a proximate cause of the harm suffered by Ms. Bean. The latter finding can be explained in light of the multiple roles of these persons who, simultaneously and interchangeably, were members, owners, employees, and patrons of the Directions Unlimited drop-in center. The contrary conclusion reached by the Court of Appeals also reflects plausible inferences from the testimony. However, in reviewing a circuit court's decision to deny a motion for new trial, the reviewing court must not substitute its own view of the evidence.

The jury further found that Mr. Flagle had engaged in sexual harassment, and that he touched Ms. Bean either without her consent or while her mental abilities precluded a meaningful consent. The jury went on to find that Mr. Flagle's misconduct was not accomplished through an exercise of authority given him by Directions Unlimited[9] and that Ms. Bean did not suffer injury or damage.[10] However, the jury's finding that the misconduct did not occur pursuant to authority granted by Directions Unlimited has ample

---

[9] As noted, Mr. Flagle apparently left the state, and is not a defendant in this suit. Thus, the plaintiff must prove that Directions Unlimited is liable in order to gain a judgment.

[10] The plaintiff is especially dismayed by the finding of no injury or damage.

evidentiary support, and thus, like the Court of Appeals, we need not reach the question of damages.

This is an unusual case involving an unusual organization that is owned and directed by persons with mental, emotional, or chemical difficulties.[11] Employees are selected from among the members, and thus each is assumed to be a person with past difficulties and the potential for future problems. In an interesting application of the organization's philosophy, it made little or no effort to investigate the background of members/owners who were beginning an employment role.

To sort out the reasonableness, wisdom, and consequences of such relationships and behavior, as well as causal connections and extent of harm, the judicial system summoned a jury of local residents. This case represents a nearly perfect example of what juries are for. In such an instance, the findings of a properly

---

[11] Here is a portion of Mr. Koivu's testimony on direct examination by plaintiff's counsel:

Q. . . . How long have you been the executive director at the drop-in center?

A. Since shortly after it opened in 1987.

Q. And what qualifications do you have to hold that position?

A. Well I grew up in a dysfunctional home, I have suffered mental illness, I . . .

Q. I'm sorry?

A. I said I grew up in a dysfunctional home, dysfunctional abusive home, I suffered mental illness and brain damage when I was a child, and I'm a recovering alcoholic and drug addict, and a convicted felon.

Q. And that's qualification for being executive director?

A. Well I was picked from among a group of mental health consumers by a group of mental health consumers when the drop-in center first opened from a group of applicants.

Q. And how much formal education do you have, sir?

A. Eighth grade.

instructed jury must be upheld if those findings can
be reconciled to the evidence. Here, the jury's find-
ings do have support in the record, and the Court of
Appeals erred by substituting its own view of the
proofs.[12]

To warrant our review, defendant was required to
show that the Court of Appeals decision was clearly
erroneous and will result in material injustice. MCR
7.302(B)(5). The question before us is whether the
Court of Appeals erred in concluding that the trial
court abused its discretion. While the dissent con-
cludes that the record supports the grant of a new
trial, this does not answer the underlying question
whether the Court of Appeals erred. Rather, it merely
leads to the conclusion that, if the trial court had
granted a new trial, this too, would have been within
the trial court's discretion. The Court of Appeals was
permitted to reverse the denial of plaintiff's motion
for a new trial *only* if that denial was " 'so palpably
and grossly violative of fact and logic that it evi-
dence[d] not the exercise of will but perversity of
will, not the exercise of judgment but defiance

---

[12] The dissent observes that Flagle's employment afforded him access
to the facility when it was closed and unoccupied, and then asserts:
"Nothing indicates that Flagle would have been able to sexually penetrate
Ms. Bean at another location or at Directions Unlimited when the facility
was open." *Post* at 36. The dissent essentially suggests that *defendant* had
to prove that the employment relationship did *not* cause the sexual
assault by showing that the assaults did not occur in the facility when it
was closed. Defendant, however, was not required to prove anything.
*Plaintiff* had the burden of proving that defendant's negligent hiring and
supervision proximately caused the assaults. The evidence at trial, includ-
ing plaintiff's vague testimony, did not compel a jury determination that
the assaults occurred when only employees had access to the facility.
Since plaintiff and Flagle were members and co-owners as well as
employees of defendant, the jury could have rationally concluded that
Flagle's employment status played no role in the assaults.

thereof, not the exercise of reason but rather of passion or bias.' " *Marrs v Bd of Medicine*, 422 Mich 688, 694; 375 NW2d 321 (1985), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).

The Court of Appeals majority essentially injected itself into the role of trier of fact, thus imposing liability on defendant contrary to a verdict rendered by a jury of local residents. Because we find support for the trial court's decision in the record, the Court of Appeals clearly erred in finding that the trial court had abused its discretion.

We are likewise convinced that material injustice will result from requiring defendant, a nonprofit organization wholly owned by individuals attempting to recover from emotional or mental health problems, to relitigate this case when a jury has already reached a decision supported by the record, particularly where overturning the jury verdict was a usurpation of power.

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

WEAVER, C.J., concurred in the result only.

KELLY, J. (*dissenting*). Defendant's application fails to establish that the Court of Appeals order was clearly erroneous and will cause material injustice. MCR 7.302(B)(5). Hence, the standard of appellate review applicable to this case has not been met. I would allow the order to stand.

At trial, the jury found that defendant's negligent hiring and supervision of Gerald Flagle was not a proximate cause of Ms. Bean's sexual victimization. Plaintiff moved for a new trial, and the judge denied the motion. On review, the Court of Appeals found that the ruling was an abuse of the trial judge's discretion, because the jury's finding was against the great weight of the evidence. *Bosak v Hutchinson*, 422 Mich 712, 737; 375 NW2d 333 (1985); MCR 2.611(A)(1)(e).

The Court of Appeals relied on undisputed facts presented at trial. It did not engage in credibility determinations. Although the evidence on which it reversed the trial court was not robust, it constituted the bulk or great weight of the evidence presented.

It established that defendant's executive director, James Koivu, learned that Gerald Flagle had been convicted of criminal sexual conduct. Flagle had sexually assaulted a mentally retarded woman at another facility before his employment with Directions Unlimited.

After Koivu became aware of the threat Flagle might pose to Ms. Bean, he discovered Flagle on the premises with her one morning before the facility was open to the public. He chose not to prevent a reoccurrence. Because of that, Flagle continued to have access to the facility when it was closed and unoccupied. In effect, Koivu made it possible for Flagle to abuse and molest the victim.

Defendant offered no evidence to counter this showing of proximate cause. Nothing indicates that Flagle would have been able to sexually penetrate Ms. Bean at another location or at Directions Unlimited when the facility was open. Therefore, defendant's

negligent hiring and supervision of Flagle was a prox-
imate cause of the victim's exploitation. The great
weight of the evidence exposes a natural and continu-
ous sequence, unbroken by new and independent
causes, beginning with defendant's negligence and
ending with the sexual abuse of the victim. *McMillian
v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985).

The Court of Appeals reversal and remand should
be allowed to stand, because it is not clearly errone-
ous and will not cause material injustice. This Court's
intervention in the case is unwarranted.

CAVANAGH, J., concurred with KELLY, J.