*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ANTONIO POOLE,

        Defendant-Appellant.

FOR PUBLICATION
January 18, 2024
9:00 a.m.

No. 352569
Wayne Circuit Court
LC No. 02-000893-02-FC

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

LETICA, P.J.

This case comes before us on remand from our Supreme Court, which directed this Court to "determine whether defendant is entitled to relief based on [the Supreme Court's] holding in *People v Parks*, [510 Mich 225; 987 NW2d 161 (2022)], that *mandatory* life-without-parole sentences imposed on 18-year-old defendants are categorically disproportionate and thus unconstitutional under Const 1963, art 1, § 16." *People v Poole*, 510 Mich 851, 851-852; 977 NW2d 530 (2022). For the reasons set forth in this opinion, we vacate defendant's first-degree murder sentence and remand for resentencing.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In mid-December 2001, defendant was recruited by his uncle and codefendant, Harold Varner, to murder the victim for $300. Specifically, Varner was having difficulty entering into a real estate transaction with Delora Lester because she needed additional financing from Varner to purchase a residential home from him. The victim, Henry Covington, was Lester's fiancé. Varner interfered with Lester's attempt to take possession of the home, and Lester and the victim were forced to leave the home after someone threw a firebomb through the kitchen window.

At 5:00 a.m. on December 12, 2001, Varner contacted Amanda Coddington, his property manager and the mother of his child and asked her to meet him at a gas station. After their meeting, Varner directed Coddington to an area to meet defendant. Defendant entered Varner's car first and then got into Coddington's car. Coddington was instructed to follow Varner's car to an area near where the victim and Lester were staying. Once there, defendant left Coddington's car, proceeded into an alley, and headed toward the victim's home. As Coddington waited, she heard

-1-

four gunshots. Defendant returned to the car after 15 minutes, holding a .357-caliber gun that he placed inside a shopping bag on the car's floor. Coddington asked defendant what happened, but he instructed her to drive away. Later, defendant told Coddington that he shot "someone," but did not identify the victim by name. Varner explained that he had the victim killed because it would make Lester easier to handle. After the murder, defendant repeatedly asked Varner for more money. Coddington later discarded the gun in a dumpster.

At the time of the murder, defendant was 18 years old, but would turn 19 years old within a month's time. Following a jury trial, defendant was sentenced to life imprisonment without the possibility of parole for first-degree murder, MCL 750.316, 24 to 90 months' imprisonment for felon in possession of a firearm, MCL 750.224f, and two years' imprisonment for possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. When imposing defendant's sentence on August 13, 2002, the trial court said:

> As to first degree murder, the law says that Mr. Poole is to serve life without parole. And so that's the sentence that I have no discretion but to give.
>
> Now, some people would say that that sentence should be for a 30-year-older instead of a 19-year-older. Some people would say, it shouldn't be for a 14-year-older, because we have 14-year-olders being tried as adults, and 13-[]year-olders. Some would say, well, if you're 50 and you committed a murder, you shouldn't go for the rest of your life.
>
> All of those considerations and concerns I imagine at one time were considered.[1] But that is the sentence that I must impose and so that is the sentence I will impose for Mr. Poole. He will be sentenced to those mandatory sentences according to the law.[2]

Thereafter, defendant filed two successive motions under MCR 6.502(G) that the trial court denied. The trial court refused to accept defendant's third successive motion, and this Court dismissed defendant's delayed application for leave to appeal. *People v Poole*, unpublished order of the Court of Appeals, entered May 1, 2020 (Docket No. 352569). Our Supreme Court determined that defendant demonstrated a retroactive change in the law, entitling him to file his

---

[1] We presume the sentencing court was referring to the Legislature that set the penalty for first-degree murder at life without the possibility of parole. *People v Hegwood*, 465 Mich 432, 436 & n 8; 636 NW2d 127 (2001) ("[T]he ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature."). We note that several proposed bills are pending that would prohibit a court from sentencing an individual under the age of 19 when their crime was committed to life imprisonment without the possibility of parole and would make those serving such a sentence eligible for parole after serving 10 years. See 2023 SB 119-123 and 2023 HB 4160-4164.

[2] Varner was convicted of second-degree murder, sentenced to 20 to 35 years' imprisonment, and was paroled in 2022.

third motion for relief from judgment. *People v Poole*, 510 Mich 851; 977 NW2d 530 (2023). Our Supreme Court vacated our order dismissing defendant's delayed application for leave to appeal under MCR 6.502(G) and remanded the matter to this Court, directing that the merits of defendant's motion for relief from judgment be addressed in light of *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022).[3] *Poole*, 510 Mich at 851-852.

## II. LIFE WITHOUT PAROLE AND AGE OF THE OFFENDER

In *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court concluded that the punishment of life without parole for juveniles constituted cruel and unusual punishment, stating:

> The two 14-year-old offenders in these cases were convicted of murder and sentenced to life imprisonment without the possibility of parole. In neither case did the sentencing authority have any discretion to impose a different punishment. State law mandated that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate. Such a scheme prevents those meting out punishment from considering a juvenile's "lessened culpability" and greater "capacity for change," *Graham v Florida*, 560 US 48, 68, 74; 130 S Ct 2011; 176 L Ed 2d 825 (2010), and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties. We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments."

After the *Miller* decision, the question arose whether its holding applied retroactively to juvenile offenders who had final convictions and sentences at the time *Miller* was decided. The opportunity to address this issue arose in *Montgomery v Louisiana*, 577 US 190, 193-194; 136 S Ct 718; 193 L Ed 2d 599 (2016). In *Montgomery*, the petitioner was 17 years old in 1963, when he killed a deputy sheriff in Louisiana. The petitioner was convicted of murder and sentenced to death, but his conviction was reversed when it was determined that public prejudice deprived him of a fair trial. On retrial, the petitioner was again found guilty but "without capital punishment." Under Louisiana law, the petitioner was automatically sentenced to life without parole upon the jury's verdict and was not given the opportunity to present mitigation evidence to justify a less severe sentence. At the time of his filing seeking relief, the petitioner was 69 years old and had spent nearly his entire life in prison. *Id*. at 194.

The *Montgomery* Court noted that, in *Miller*, it was determined that mandatory life without parole for juvenile offenders that committed homicide violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. at 195. The failure to consider youth and its accompanying circumstances to the harshest prison sentence of life without parole posed a risk of

---

[3] Despite concluding that defendant was entitled to file his successive motion for relief from judgment, our Supreme Court did not remand the matter to the trial court for acceptance of the motion and direct the trial court to render a decision on the motion.

disproportionate punishment. And, therefore, sentencing courts were now required to consider the juvenile's diminished capacity and heightened ability to change before sentencing him to life or to die in prison. Despite the prohibition on cruel and unusual punishment, the *Montgomery* Court noted that a trial court was not foreclosed from sentencing a juvenile defendant to life without parole. But, "a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption.' " *Id*. at 195 quoting *Miller*, 567 US at 479-480.

Following the decision in *Miller*, the petitioner sought collateral review of his sentence, and the Louisiana state courts concluded that *Miller* did "not have retroactive effect in cases on state collateral review." *Montgomery*, 577 US at 196-197. The *Montgomery* Court granted certiorari to address whether the *Miller* Court adopted a new substantive rule that applied retroactively on collateral review for defendants sentenced as juveniles to die in prison. *Id*. at 197. The *Montgomery* Court addressed retroactivity, stating:

> Justice O'Connor's plurality opinion in *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989), set forth a framework for retroactivity in cases on federal collateral review. Under *Teague*, a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced. *Teague* recognized, however, two categories of rules that are not subject to its general retroactivity bar. First, courts must give retroactive effect to new substantive rules of constitutional law. Substantive rules include "rules forbidding criminal punishment of certain primary conduct," as well as "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v Lynaugh*, 492 US 302, 330; 109 S Ct 2934; 106 L Ed 2d 256 (1989); see also *Teague*, *supra*, at 307; 109 S Ct 1060[; 103 L Ed 2d 334]. Although *Teague* describes new substantive rules as an exception to the bar on retroactive application of procedural rules, this Court has recognized that substantive rules "are more accurately characterized as . . . not subject to the bar." *Schriro v Summerlin*, 542 US 348, 352, n 4; 124 S Ct 2519; 159 L Ed 2d 442 (2004). Second, courts must give retroactive effect to new " ' "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' " *Id*., at 352; 124 S Ct 2519[; 159 L Ed 2d 442]; see also *Teague*, 489 US[] at 312-313; 109 S Ct 1060[; 103 L Ed 2d 334]. [*Montgomery*, 577 US at 198.]

In response to the argument that the *Teague* decision had no bearing on state collateral review, the

*Montgomery* Court rejected the assertion that its constitutional commands were not binding on state courts, stating:

> The Court now holds that when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule. *Teague*'s conclusion establishing the retroactivity of new substantive rules is best understood as resting upon constitutional premises. That constitutional command is, like all federal law,

binding on state courts. This holding is limited to *Teague*'s first exception for substantive rules; the constitutional status of *Teague*'s exception for watershed rules of procedure need not be addressed here.

This Court's precedents addressing the nature of substantive rules, their differences from procedural rules, and their history of retroactive application establish that the Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final.

\* \* \*

*It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced.* [*Montgomery*, 577 US at 200, 203 (emphasis added).]

Accordingly, substantive rules are those that forbid criminal punishment of certain primary conduct as well as those that prohibit "a certain category of punishment for a class of defendants because of their status or offense." *Montgomery*, 577 US at 200-201 (quotation marks and citation omitted). "Substantive rules, then, set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Id*. at 201. When a state enforces a penalty barred by the Constitution, the resulting sentence is unlawful. *Id*. Accordingly, new substantive rules are applied retroactively. *Id*. at 202.

The *Montgomery* Court further determined that the *Miller* decision applied to collateral review and did not implicate a state's interest in finality of convictions and sentences, even if it did contain a procedural component when addressing the offender's youth and attendant circumstances. *Id*. at 204, 209-210. Ultimately, the *Montgomery* Court stated:

The Court now holds that *Miller* announced a substantive rule of constitutional law. The conclusion that *Miller* states a substantive rule comports with the principles that informed *Teague*. *Teague* sought to balance the important goals of finality and comity with the liberty interests of those imprisoned pursuant to rules later deemed unconstitutional. *Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution.

Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, *e.g.*, Wyo. Stat. Ann. §6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change. [*Id.* at 212.]

Although the *Montgomery* decision addressed juveniles *under* the age of 18, defendants on the cusp of that age sought relief from sentences of life imprisonment. Indeed, in *Parks*, 510 Mich at 232-233, the defendant was 18 years old when he was involved in a shooting. Specifically, the defendant and his cousin were in a vehicle having a discussion in low voices. The defendant handed his cousin a gun, and the two men entered a store. The defendant remained in the store while his cousin left and went into the parking lot. The victim was shot while sitting in his car in that parking lot. Witnesses heard the gunshots and saw the cousin flee the parking lot. The prosecutor did not assert that the defendant shot the victim. Rather, the charge of first-degree premeditated murder, MCL 750.316(1)(a), against the defendant was premised on an aiding and abetting theory. Ultimately, a jury convicted the defendant of first-degree premeditated murder, carrying a concealed pistol, MCL 750.227(2), and felony-firearm, MCL 750.227b. Pertinent to this appeal, the defendant was sentenced to life without parole for the first-degree murder conviction. *Id.* at 233. On appeal, this Court rejected defendant's challenge to his sentence as cruel and unusual. However, our Supreme Court concluded that, although the sentence did not violate the Eighth Amendment, it violated the broader protections prohibiting cruel or unusual punishment in Michigan's Constitution:

[I]n light of current federal precedent, we find no support in the Eighth Amendment for extending *Miller*'s protections under the Eighth Amendment beyond the bright line originally set[.] But the fact that the United States Supreme Court has decided to draw the line at 17 [year olds] does not preclude us from drawing a different line pursuant to the broader protections provided by the Michigan Constitution. It is only logical that Michigan's "cruel *or* unusual" language is broader than the Eighth Amendment floor. And the Supreme Court, in fact, recently indicated that states have a wide latitude in providing greater *Miller* protections. . . .

In other words, we may draw our own line, and we do so today.

*   *   *

Although we are not bound by the United States Supreme Court's interpretation of the Eighth Amendment when interpreting our constitutional prohibition on cruel or unusual punishment, we find *Miller* and *Montgomery* persuasive to the extent they held that juveniles are constitutionally different from adults for purposes of imposing a life-without-parole sentence and, for the reasons stated in this opinion, adopt that general proposition under the Michigan Constitution. However, we part ways with the United States Supreme Court's jurisprudence to the extent the Court drew the line for defining the class of

-6-

defendants that are entitled to individualized sentencing to those under the age of 18. [*Parks*, 510 Mich at 247-248.]

After examining scientific analysis of brain development, the *Parks* majority determined that extending constitutional protections against cruel or unusual punishment to 18-year-old defendants did not interfere with the role of the Legislature and the separation of powers:

> In order to determine whether our Constitution compels additional considerations when sentencing 18-year-old defendants convicted of first-degree murder to mandatory life without parole, we apply the [*People v*] *Lorentzen*[, 387 Mich 167; 194 NW2d 827 (1972)] test, as reaffirmed in [*People v*] *Bullock*[, 440 Mich 15; 485 NW2d 866 (1992)]. The *Lorentzen* test is used to determine whether a punishment is disproportionate and thus "cruel or unusual." We reiterate that this four-factor test requires us to consider: (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically "rooted in Michigan's legal traditions . . . ." *Bullock*, 440 Mich at 33-34.
>
> We hold that this test, overall, compels the conclusion that mandatorily subjecting 18-year-old defendants to life in prison, without first considering the attributes of youth, is unusually excessive imprisonment and thus a disproportionate sentence that constitutes "cruel or unusual punishment" under Const 1963, art 1, § 16. While the Legislature has authorized such sentences, we are duty-bound to enforce the state Constitution through application of the *Lorentzen* test to reflect "the deeper, more profound judgment of the people reflected in the constitution . . . ." *Bullock*, 440 Mich at 40-41. That judgment compels an individualized sentencing process before condemning 18-year-olds to die behind prison walls.
>
> While the dissent believes that the punishment rendered in this case is a statutory decision that is only within the purview of the Legislature, we note that the interpretation of Const 1963, art 1, § 16 governs our decision. We are duty-bound to interpret the Constitution, no matter the outcome. Contrary to what the dissent argues, determining whether the Legislature's chosen sentence runs afoul of our Constitution's protections is well within the purview of this Court and does not violate any separation-of-power principles. We cannot shirk our duty and defer to the Legislature's choice of punishment when its choice is offensive to our Constitution. See *Bullock*, 440 Mich at 41 ("The very purpose of a constitution is to subject the passing judgments of temporary legislative or political majorities to the deeper, more profound judgment of the people reflected in the [C]onstitution, the enforcement of which is entrusted to our judgment."). [*Parks*, 510 Mich at 254-256.]

The *Parks* defendant, who committed his offense as an 18-year-old, was deemed entitled to relief of his unconstitutional sentence, see MCL 769.25.[4]  In his appeal to our Supreme Court, this defendant similarly committed his offense when an 18-year-old, but exhausted his appeals before *Parks* was decided.  Thus, defendant seeks collateral relief through MCR 6.508 despite filing two prior successive motions for relief from judgment.

## III.  RELIEF FROM JUDGMENT

This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion.  *People v Owens*, 338 Mich App 101, 113; 979 NW2d 345 (2021).  An abuse of discretion occurs when the trial court makes an error of law or when its decision falls outside the range of reasonable and principled outcomes.  *Id*.  But, the trial court's fact findings supporting its decision on the motion for relief from judgment are reviewed for clear error.  *People v Kasben*, 324 Mich App 1, 7; 919 NW2d 463 (2018).  The defendant must demonstrate the right to relief.  MCR 6.508(D).[5]

In relevant part, MCR 6.508(D) provides:

> The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
>
> \* \* \*
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

---

[4] MCL 769.25 governs the process for examining the sentences of juvenile offenders affected by the *Miller* decision and possible resentencing.  See MCL 769.25a(2).  The *Parks* Court vacated Parks's sentence for first-degree murder and remanded for resentencing in accord with MCL 769.25.

[5] Our Supreme Court opted to remand the case to this Court despite determining that defendant satisfied MCR 6.502(G).  When deciding a motion for relief from judgment, MCR 6.508, the trial court makes factual findings and an ultimate ruling on the motion.  This Court does not find facts but merely serves as an error correcting court.  See *Bean v Directions Unlimited, Inc*, 462 Mich 24, 34 n 12; 609 NW2d 567 (2000) ("The Court of Appeals role is not to 'find' facts. . . ."); *People v Blevins*, 314 Mich App 339, 352 n 5; 886 NW2d 456 (2016) ("The Court of Appeals is an error-correcting court. . . .").  We agree with the dissent that the appropriate disposition would have been a remand to the trial court to accept the third motion for relief from judgment and to address the merits of the motion.  Therefore, our discussion of MCR 6.508(D) is limited to address the application of the *Parks* decision in the context of collateral review.

(b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

Relevant to this appeal, "actual prejudice" means that, "in the case of a challenge to the sentence, the sentence is invalid." MCR 6.508(D)(3)(b)(*iv*).[6]

We conclude that defendant satisfied the "good cause" and "actual prejudice" requirements for purposes of MCR 6.508(D)(3). Defendant has good cause for failing to raise the issue in his claim of appeal or initial motions for relief from judgment. Defendant committed the murder in 2001, and the United States Supreme Court did not determine that life without parole sentences as applied to juveniles under the age of 18 was cruel and unusual punishment until 2012. Thus, defendant should not be penalized for failing to raise the issue in his original appellate challenge or earlier successive motions for relief from judgment. See *People v Reed*, 449 Mich 375, 384-385 n 8; 535 NW2d 496 (1995) (Prejudice may be caused by external factors including whether a legal basis for a claim was then available to counsel.).

Court authority over a defendant typically ends when a valid sentence is pronounced. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). But a court may correct an invalid sentence. *Id.* "A sentence is invalid when it is beyond statutory limits, when it is based upon constitutionally impermissible grounds, improper assumptions of guilt, a misconception of law, or when it conforms to local sentencing policy rather than individualized facts." *Id.* A sentence premised on inaccurate information also may be deemed invalid. *Id.* In this case, defendant contends that his sentence is invalid because it is premised on constitutionally impermissible grounds; his sentence violates the prohibition on cruel and/or unusual punishment. Consequently, defendant established that he will suffer actual prejudice if his sentence violates this prohibition.

The *Parks* Court employed a four-factor test to assess whether a punishment is disproportionate and thus "cruel or unusual." This test requires the court to consider: (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically "rooted in Michigan's legal traditions . . . ." *Parks*, 510 Mich at 254-255, citing *Bullock*, 440 Mich at 33-34. The *Parks* Court further determined that "mandatorily subjecting 18-year-old defendants to life in prison, without first considering the attributes of youth, is unusually excessive imprisonment and thus a disproportionate sentence that constitutes 'cruel or unusual punishment' under Const 1963, art 1, § 16." *Parks*, 510 Mich at 255.

---

[6] The "good cause" and "actual prejudice" factors are not relevant until the trial court determines that a successive motion is within one of the exceptions of MCR 6.502(G)(2). *People v Swain*, 288 Mich App 609, 632-633; 794 NW2d 92 (2010). Our Supreme Court determined that defendant had "met the requirements necessary to file a successive motion for relief from judgment pursuant to MCR 6.502(G)(2)." *Poole*, 510 Mich at 851. See *People v Stovall*, 510 Mich 301, 310-311; 987 NW2d 85 (2022) (A defendant's claim need not fall squarely within a retroactive change in the law, but need only serve as a "foundation" or "base" to overcome the procedural bar of MCR 6.502(G)(2).)

As stated in *Montgomery*, "a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Montgomery*, 577 US at 203. Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Id*. at 201. When a state enforces a penalty barred by the Constitution, the resulting sentence is unlawful. *Id*. New substantive rules are applied retroactively. *Id*. at 202. Because the *Parks* Court extended the protections of juvenile defendants from a cruel or unusual punishment of mandatory life imprisonment without the possibility of parole to 18-year-olds, this substantive rule determination, prohibiting a certain category of punishment for a class of defendants without consideration of the mitigating factors of youth must be applied retroactively even upon collateral review.

## IV. STATE RETROACTIVITY

On appeal, defendant argued that a state retroactivity analysis is not required, but, even if it was, *Parks* applied retroactively. The prosecution did not respond directly to defendant's first argument in its briefing.[7] Instead, it urged this Court to adopt the federal test announced in *Teague*,

---

[7] Before remanding this matter to this Court, our Supreme Court heard oral argument on defendant's application for leave to appeal. At that time, JUSTICE CAVANAGH asked defense counsel, "If we agree that [defendant] is allowed to file a successive motion and that offenders who are 18 . . . have a right to a *Miller* hearing, do we still have to determine whether or not our extension of *Miller* to [juveniles who are] 18 applies retroactively under Michigan law? I mean do we have that here to be able to decide or does that need to go back?" Defense counsel responded that she would welcome the opportunity to brief the issue; however, she alternatively proposed that the Supreme Court could explicitly determine that its decision applied retroactively as it had in *Bullock*.

In *Bullock*, the Supreme Court struck down life without parole sentences for two defendants convicted of possession of over 650 grams of cocaine as being cruel or unusual under the state Constitution. *Bullock*, 440 Mich at 27-42. The defendants' challenges to their sentences arose during their initial appeal. In addition to invalidating the defendants' sentences, the Court further held: "[O]ur decision today necessarily invalidates the sentences of all defendants currently incarcerated under the same penalty, and for committing the same offense, as the defendants at bar." *Id*. at 42.

On appeal, defendant contends that the same is true here, adding that our Supreme Court adhered to this principle in *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022). In *Stovall*, the defendant was sentenced to life with the possibility of parole for two separate second-degree murder convictions committed in 1991 when he was a juvenile. *Id*. at 308. The defendant filed a successive motion for relief from judgment in 2017, after *Miller* and *Montgomery* were decided, challenging his sentence of life with the possibility of parole as "cruel and/or unusual under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan Constitution." *Id*. at 312. The Court easily dispensed with the defendant's Eighth Amendment challenge quoting from *Montgomery*: " 'A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.' "

to reject the *Montgomery* majority's analysis that *Miller* applied retroactively, and to follow the reasoning of the *Montgomery* dissenters to conclude that *Parks* did not apply retroactively.[8] During oral argument, this Court raised the question of the applicability, if any, of *People v Carp*, 496 Mich 440; 852 NW2d 801 (2014), cert gtd and opinion vacated sub nom on other grounds *Carp v Michigan*, 577 US 1186; 136 S Ct 1355; 194 L Ed 2d 339 (2016).[9] In *Carp*, which was decided before *Montgomery*, our Supreme Court determined that *Miller* did not satisfy the test for retroactivity under federal or state law. *Carp*, 496 Mich at 451. In so holding, the *Carp* Court determined that the rule adopted in *Miller* was procedural. *Id*. at 484-485. But, as the *Montgomery*

---

*Stovall*, 510 Mich at 313, quoting *Montgomery*, 577 US at 212. Analyzing the question under the Michigan Constitution, however, the Court ruled that the defendant's life-with-the-possibility-of-parole sentence was cruel or unusual. *Id*. at 307, 313-322. Stated otherwise, our Supreme Court afforded sentencing relief on state constitutional grounds to a defendant who challenged his sentence on collateral review based on *Miller* and *Montgomery*.

We recognize that *Parks* was issued on the same day as *Stovall*. In *Parks*, our Supreme Court explained that "automatic condemnation to die in prison at 18 is beyond severity—it is cruelty" given the defendant's brain development. *Parks*, 510 Mich at 258. In its conclusion, the Court observed:

> [M]andatorily subjecting 18-year-old defendants convicted of first-degree murder to a sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution, *Lorentzen*, 387 Mich at 176-181[]; *Bullock*, 440 Mich. at 33-34[], and thus constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16. This renders Parks's automatic sentence of life without parole unconstitutional. Parks and other 18-year-old defendants convicted of first-degree murder are entitled to the full protections of MCL 769.25 and our caselaw, as opposed to the automatic sentencing scheme in MCL 750.316(1). [*Parks*, 510 Mich at 268.]

This last sentence may be interpreted to apply to defendants, who like Parks were on direct review; however, it may also be read as similar to the broad language in *Bullock*, albeit not as explicit. Moreover, as a matter of logic, we question whether the State could continue to impose a sentence that a court has determined is cruel or unusual on a prisoner simply because the time to directly challenge their sentence has passed. Regardless of the inferences of the *Parks* decision and the questionable clarity of the remand order in our case, we will address the retroactivity argument.

[8] A state may have a different retroactivity rule for state constitutional decisions and may even have a retroactivity rule more favorable for defendants for new federal constitutional rules than does the United States Supreme Court. *Danforth v Minnesota*, 552 US 264; 128 S Ct 1029; 169 L Ed 2d 859 (2008).

[9] After oral argument, the parties filed supplemental briefs addressing *Carp*'s viability. Defendant contended that *Carp* lacked any precedential value. The prosecution asserted that *Carp*'s state-law retroactivity analysis controlled the outcome here.

-11-

Court subsequently determined, *Miller*'s rule was substantive and applied retroactively to cases on collateral review.

Our Supreme Court derived our state's retroactivity analysis from *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965).[10] *People v Hampton*, 385 Mich 669, 674; 197 NW2d 404 (1971). The Court identified the following "key factors" to determine whether a judicial decision applies retroactively under state law: "(1) [t]he purpose of the new rule; (2) the general reliance on the old rule; and (3) [t]he effect on the administration of justice." The Court subsequently recognized that *Linkletter* discussed retroactivity as it pertained to "the use of evidence or on a particular mode of trial" and that "[t]hose procedural rights and methods of conducting trials . . . do not encompass all of the rights found in the first eight Amendments." *People v Gay*, 407 Mich 681, 705-706; 289 NW2d 651 (1980). Consequently, "when faced with a retroactivity question," the Court recognized that an analytical distinction has evolved." *Id*. at 706.

> When considering procedural rules governing trial conduct, the *Linkletter-Hampton* criteria play a predominant role. However, when non-procedural or substantive rights of a fundamental nature are affected, they are normally to be accorded retrospective application. The *Linkletter-Hampton* considerations may be addressed, but only in the rare instance will they have determinative effect. [*Gay*, 407 Mich at 706.]

The holding in *Parks*, as in *Miller*, is substantive, not procedural. Therefore, *Carp*'s analysis of retroactivity, constructed upon the faulty premise that *Miller*'s rule was a procedural rule, does not control the outcome here. Indeed, in *Stovall*, our Supreme Court afforded relief to a defendant, who on collateral review, sought to extend *Miller*'s principles on state constitutional grounds.

Our state prohibition against cruel or unusual punishment protects criminal defendant "against barbaric and inhumane punishments." *Id*. at 243. As explained in *Parks*, the purpose of the *Miller/Montgomery* requirements is to ensure individualized sentencing in order to avoid imposition of an unconstitutionally cruel or unusual sentence of mandatory life without parole sentence. Therefore, the attributes of youth that defendant shares with juvenile defendants must be considered by the sentencing court. *Parks*, 510 Mich at 266-267. Restoring discretion to the sentencing judge to consider the *Miller* factors "ensure[s] that life-without-parole sentences are

---

[10] "*Linkletter* was subsequently disavowed as the federal standard for retroactivity in *Griffith v Kentucky*, 479 US 314; 107 S Ct 708; 93 L Ed 2d 649 (1987)[.]" *People v Barnes*, 502 Mich 265, 273 n 5; 917 NW2d 577 (2018).

imposed only in cases where that sentence is appropriate in light of the defendant's age." *Jones v Mississippi*, 593 US ; 141 S Ct 1307, 1318; 209 L Ed 2d 390 (2021).[11]

Accordingly, we vacate defendant's sentence of mandatory life without the possibility of parole for first-degree murder and remand for proceedings consistent with MCL 769.25. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Stephen L. Borrello

---

[11] Although there was reliance on the mandatory life-without-parole sentences on 18-year-olds convicted of first-degree murder, the impact on the administration of justice should be short-lived given the limited class of defendants that will have to be resentenced after consideration of the *Miller* factors.