*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL JAY WEAVER,

        Defendant-Appellant.

UNPUBLISHED
September 16, 2025
9:31 AM

No. 370736
Newaygo Circuit Court
LC No. 2022-013116-FH

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Defendant, proceeding *in propria persona*, appeals as of right his jury trial conviction of one count of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), second or subsequent offense, MCL 333.7413(2). We affirm.

## I. FACTS AND PROCEEDINGS

At trial, Michigan State Police Trooper William Fry testified that police received an anonymous tip about activities involving methamphetamine at defendant's home. Upon arrival at his home, a mouth swab test was performed on defendant that showed he had methamphetamine in his system. During a search of defendant's home, officers found a plastic "pen body" or straw that contained a substance later confirmed to be methamphetamine residue. They also found a "torch" lighting device commonly used to smoke methamphetamine. During questioning, defendant admitted that he recently smoked methamphetamine.

Although retained counsel represented defendant at trial, after her cross-examination of the first witness, Trooper Fry, defendant stated that he wanted to act as his own counsel. After lengthy questioning by the trial court, as well as numerous warnings about the potential risks and consequences of doing so, defendant stated that he unequivocally wished to exercise his right to self-representation. Defendant was convicted as charged.

Defendant requested the appointment of counsel for sentencing, and after his appointed attorney was dismissed because of a breakdown of the attorney-client relationship, attorney Dianne Longoria was appointed to represent defendant at sentencing. Before the sentencing hearing,

Longoria moved for a new trial or judgment notwithstanding the verdict (JNOV). Longoria made various arguments related to the admission of the straw containing methamphetamine and argued that defendant felt forced to represent himself at trial. The trial court denied the motion.

At his sentencing hearing, after going through corrections to defendant's presentence investigation report (PSIR), Longoria told the trial court that, although she was not dismissed as defendant's counsel, defendant, acting pro se, wished to file "a motion for an evidentiary hearing, a motion to recuse, and several others." Longoria then gave the trial court various handwritten documents. When the trial court asked if defendant had any corrections, additions, or challenges to the PSIR, defendant stated that he wanted to "challenge the transcripts" and that his postconviction motion was based on inaccuracies in the transcripts. Defendant also argued that the trial judge should be disqualified because defendant filed grievances against him in another case. The trial court, apparently treating defendant's assertions as his allocution, did not respond to defendant's remarks and sentenced defendant as described. Thereafter, the trial court denied defendant's motion to disqualify because it was untimely, it was not supported by an affidavit, and it lacked merit. The Newaygo Circuit Court clerk returned defendant's pleadings because they were not signed by his attorney of record.

Gary Strauss was appointed as defendant's appellate counsel, and he filed defendant's appeal of right in this Court. Defendant then filed his own claim of appeal and various motions, but those were returned to defendant because Strauss was defendant's counsel of record. Thereafter, Strauss moved to withdraw after defendant told him that he wanted to represent himself on appeal. The trial court granted the motion, and defendant now continues pro se.[1]

## II. MOTION FOR EVIDENTIARY HEARING TO CORRECT ERRORS

Defendant contends that the trial court erred by failing to grant his motion for an evidentiary hearing to correct alleged errors in the transcripts.

The trial court did not rule on defendant's motion to correct the record, and the circuit court clerk returned defendant's pleadings as improperly filed, because defendant had retained counsel at the time, and MCR 1.109(E)(2) provides that "[e]very document of a party represented by an

---

[1] Defendant repeatedly states in his appellate brief that he was, and continues to be, "forced" into representing himself. But he states that he was "forced" because his attorneys would not listen to him, or follow his directives, about what to argue in court. So, in essence, defendant was "forced" to proceed pro se not by the courts or counsel, but because he felt it was the only way to properly pursue his case. Additionally, when it obtained defendant's waiver of his right to counsel, the trial court fully complied with both *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D). We further observe that defendant has unsuccessfully asserted a claim of forced self-representation in two previous, unrelated appeals. *People v Weaver*, unpublished per curiam opinion of the Court of Appeals, issued February 6, 2018 (Docket No. 335691); *People v Weaver*, unpublished per curiam opinion of the Court of Appeals, issued February 21, 2017 (Docket No. 329900).

attorney shall be signed by at least one attorney of record." Defendant has not shown any error in the clerk's determination that his motion should have been returned without filing.

In addition to the requirement of MCR 1.109(E)(2), caselaw makes clear that "a defendant has a constitutional entitlement to represent himself or to be represented by counsel—but not both." *People v Dennany*, 445 Mich 412, 442; 519 NW2d 128 (1994). No right to "hybrid" representation exists, *People v Kevorkian*, 248 Mich App 373, 421-422; 639 NW2d 291 (2001), and "the right of self-representation and the right to counsel are mutually exclusive," *People v Russell*, 471 Mich 182, 189; 684 NW2d 745 (2004). Longoria continued to represent defendant through sentencing, and defendant was not permitted to simultaneously act as his own counsel by filing and arguing his own motions during Longoria's representation. See *Kevorkian*, 248 Mich App at 421-422. The trial court did not err by declining to rule on a motion not properly before it.[2]

### III. ASSISTANCE OF COUNSEL

Defendant argues that Longoria and Strauss should have investigated and raised his claims of inaccuracies in the transcripts and that they were required to do so as his counsel. However, in his response brief he unequivocally, and repeatedly, disclaims any intent or interest in raising an ineffective assistance argument. Indeed, he questions plaintiff's counsel for treating his arguments about Longoria and Strauss as setting forth an ineffective assistance argument.[3] Because defendant's brief is clear that he is not arguing ineffective assistance of counsel, we take him at

---

[2] Defendant also challenges this Court's denial of his motion for an evidentiary hearing to correct the record, but that motion was already disposed of and the time for further review of that order has expired. Further, defendant did not ask this Court to remand for an evidentiary hearing but asked this Court to conduct the hearing. Although defendant correctly argues that this Court may, in its discretion, "permit amendment, corrections, or additions to the transcript or record" under MCR 7.216(A)(4), we are an error-correcting court, *People v Blevins*, 314 Mich App 339, 352 n 5; 886 NW2d 456 (2016), and we do not conduct evidentiary hearings or make findings of fact, see *Bean v Directions Unlimited, Inc*, 462 Mich 24, 34 n 12; 609 NW2d 567 (2000).

[3] For instance, defendant states that "[the assistant attorney general] raises the issue of ineffective assistance of counsel, numerous times and I don't believe I ever said any such thing in my brief. [] So I wonder where he got that 'ineffective assistance' terminology from, and why he felt the need to go through all that intricate 'legalese.' " At another point he states "MORE ineffective assistance of counsel argument! (Why does he feel such an overwhelming need to defend an issue I haven't yet raised?)." Finally, defendant says towards the end of his response that "My whole argument, my whole appeal, at this point, is whether I have a Constitutional due process right to The Truth and an accurate record, if the trial court judge abused his discretion by refusing to follow the Court Rules." Defendant could not be clearer that he is not pursuing an ineffective assistance argument, and we take him at his word. We express no opinion whether he can in the future.

his word. Any such argument is therefore waived. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).[4]

## IV. ALLEGATIONS OF TRANSCRIPTION ERRORS

We further hold that defendant's allegation of errors in the transcripts is unsupported and that he cannot show that the failure to raise the issue deprived him of any postconviction rights.

Questions regarding the accuracy or completeness of lower court records generally arise when a party discovers that there is no transcript of a trial court proceeding or when, as here, a party claims that a proceeding was not accurately transcribed. If a party claims that a transcript is missing, a defendant's constitutional rights are satisfied if the record is sufficient to evaluate the question raised. *People v Craig*, 342 Mich App 217, 227; 994 NW2d 792 (2022). "In addition to the constitutional rights requiring a sufficient record of trial proceedings, MCR 8.108(B)(1) provides that '[t]he court reporter or recorder shall . . . take a verbatim record' of most court proceedings." *Id.* at 227-228. In *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 679; 997 NW2d 511 (2022), this Court addressed claims of error in transcripts of trial court hearings:

> [Defendant] generally contends that an accurate transcript is necessary to preserve her appellate and other postjudgment rights. All other things being equal, this is broadly true: "[w]here a defendant is able to make a colorable showing that inaccuracies in transcription have adversely affected the ability to secure postconviction relief, and such matters have seasonably been brought to the trial court's attention, the defendant is entitled to a remedy." *People v Abdella*, 200 Mich App 473, 475-476; 505 NW2d 18 (1993). Nevertheless, transcripts are presumed to be accurate. *Id.* at 475. To obtain relief on the ground that a transcript is inaccurate, a person must:
>
> > (1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure

---

[4] In any event, any ineffective assistance arguments would not succeed. Defendant "bears the burden of establishing the factual predicate" for his ineffective assistance argument. *People v Haynes*, 338 Mich App 392, 430; 980 NW2d 66 (2021). Although defendant asserts that he told Longoria about transcript errors before she filed the posttrial motion, nothing in the record supports that claim. According to the record, the earliest reference to any alleged transcript errors was at the sentencing hearing in April 2024, but the trial court had denied the motion for new trial or JNOV 34 days earlier. Thus, the record does not show that Longoria knew about any alleged transcript errors until months after she filed the posttrial motion and weeks after the motion was decided. With respect to Strauss, nothing in the existing record suggests that he knew about alleged transcript errors or that, in failing to pursue the matter during the short term of his representation, his actions fell below an objective standard of reasonableness. And, because defendant filed his own motions and briefs on appeal, nothing shows that, but for Strauss's conduct, the result of the proceedings would be different.

-4-

postconviction relief pursuant to subchapters 7.200 and 7.300 of our court rules. [*Id.* at 476 (citation omitted).]

Furthermore, inaccuracies in the record are irrelevant "if the surviving record is sufficient to allow evaluation of the issues on appeal," and "[w]hether the record is sufficient depends upon the question asked of it." *Elazier v Detroit Non-Profit Housing Corp*, 158 Mich App 247, 249-250; 404 NW2d 233 (1987).

Vague concerns about an impact on the defendant's rights or that there may remain errors in the record are not enough to merit relief. *Pavlos-Hackney*, 343 Mich App at 680. Because transcripts are presumed accurate, errors must be established by corroborating video evidence, affidavits from trial participants or observers, or reference to reports or other hearings. *Id.* Alternatively, a party may refer to police reports or testimony from the preliminary examination to demonstrate error, or show that the testimony, as written, is nonsensical considering final arguments. *Abdella*, 200 Mich App at 476 n 2.

Despite defendant's assertion of an ability to do so, he has provided no independent corroboration of claimed transcript inaccuracies. Defendant admitted in his motion in the trial court that he based his claims of error on his own memory, but he also stated that he has witnesses who compared the transcripts to recordings of the trial court proceedings. However, defendant did not provide affidavits from any witness, making defendant's assertions mere speculation. Indeed, defendant told the trial court that, at an evidentiary hearing, they would sit and watch the proceedings while going through each line of the transcript to find errors, suggesting this is nothing more than a fishing expedition. See *Pavlos-Hackney*, 343 Mich App at 680.

Nor does defendant describe how inaccuracies in the transcripts adversely affected his ability to obtain postconviction relief. See *id.* at 679; *Abdella*, 200 Mich App at 475-476. Instead he just makes vague assertions about his right to an accurate record, general claims about "the truth," and claims that the outcome of Longoria's motion for new trial or JNOV may have been different if she had access to an accurate record. Defendant's failure to articulate with some specificity how any particular error impacted any viable legal argument is fatal. See *Pavlos-Hackney*, 343 Mich App at 680. Defendant has not made a colorable claim that errors in the transcripts adversely affected his rights.

V. MOTION FOR DISQUALIFICATION

Defendant next argues that the trial court erred by denying his motion for disqualification or recusal. "When this Court reviews a decision on a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014) (quotation marks and citation omitted).

The grounds for judicial disqualification of a judge are set forth in MCR 2.003(C)(1)(a), which provides that disqualification is warranted if the judge is biased or prejudiced against a party. "To avoid delaying trial and inconveniencing the witnesses, all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification. If the discovery is made within 14 days of the trial date, the motion must be made forthwith." MCR 2.003(D)(1)(a).

If a motion is untimely, it may still be granted if good cause is shown for the delay. MCR 2.003(D)(1)(d).

The trial court did not err when it ruled that defendant's motion for disqualification (which was not properly filed in any event) was untimely. Defendant was aware that he had previously filed a grievance against the trial judge as soon as the case was assigned. Because defendant did not move for disqualification until his sentencing hearing, it was plainly outside of the 14-day period in MCR 2.003(D)(1)(a). Defendant contends, however, that he was not aware that he would need to move for disqualification until the trial court denied defendant's motion for an evidentiary hearing to make corrections to the record. But the trial court did not rule on that motion because it was not properly before the court. For that reason, defendant's delay in bringing the motion to disqualify could not have been founded on the trial court's ruling on that motion.

Defendant's brief on appeal suggests that the trial judge demonstrated bias throughout his trial by not ruling in his favor and by "forcing" defendant to represent himself. "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). In any event, defendant's trial ended on August 23, 2023, so defendant would have had until September 6, 2023, to file the motion to disqualify under MCR 2.003(D)(1)(a). Defendant's attempt to have the motion considered during his sentencing in April 2024 was plainly outside of the time limit in MCR 2.003(D)(1)(a). Moreover, to the extent that defendant's brief can be read to suggest that he was unaware of any judicial bias until he discovered alleged alterations of the trial transcripts, defendant claimed to be aware of these errors before Longoria moved for a new trial or JNOV in December 2023. Under any scenario, defendant's motion to disqualify the trial judge filed in April 2024 was untimely, and the trial court correctly denied the motion on that basis.

## VI. APPELLATE COUNSEL REQUEST

Finally, defendant argues that the trial court abused its discretion because his appellate attorney was assigned from the Michigan Appellate Assigned Counsel System (MAACS) instead of the State Appellate Defender Office (SADO).

Defendant wrote on his request for an appellate attorney that, "defendant request[s] SADO," but he did not argue at sentencing, in a motion, or at any other hearing that the trial court was required to appoint appellate counsel from the office of his choice, and he did not object to or challenge the appointment of Strauss as his appellate counsel. Therefore, defendant's claim of error is not preserved for appellate review. See *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022), and *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In support of his position that he was entitled to a SADO attorney, defendant relies on statutes and administrative orders. On the form requesting the appointment of counsel, defendant cited Administrative Order No. 1989-3(6)(f), 432 Mich cxx (1989), which provided that, "[w]hen the defendant expresses a preference for counsel whose name appears on the local list, and who is eligible and willing to accept the appointment, the local designating authority shall honor it." Defendant's reliance on AO 1989-3 is misplaced because he did not express a preference for a specific attorney on the local list, and AO 1989-3 has been superseded.

-6-

In Administrative Order No. 2014-18, 497 Mich cxviii (2014), the Court merged SADO and MAACS. Following this merger, the appellate defense commission is "responsible for enacting regulations to govern the MAACS roster and the selection of felony appellate assigned counsel, including SADO's appropriate share of appellate appointments under MCL 780.716(c)." Administrative Order No. 2017-3, 501 Mich cxxii, cxxiv (2017). AO 2017-3 explicitly superseded AO 1989-3 and provided that "[t]rial courts shall address all requests for the appointment of felony appellate counsel under the regulations and procedures approved by the Commission and in conformity with applicable court rules."

When Strauss was appointed to represent him in April 2024, the Appellate Defender Act, MCL 780.712(6), provided that a trial court may appoint counsel from the appellate commission roster "or" refer the appointment to SADO. The statute provides alternative ways to appoint appellate counsel, and nothing in the statute requires the trial court to appoint counsel from a particular office or to defer to a general request for one office or another. The trial court did not plainly err because its appointment complied with MCL 780.712(6). *Carines*, 460 Mich at 763-764.

Further, given the SADO and MAACS merger, defendant offers no explanation of how an appointment made from one office or another could have affected his substantial rights. See *id*. And, because defendant decided to represent himself on appeal, he cannot show that the failure to appoint appellate counsel from SADO interfered with his ability to pursue any postconviction or appellate relief. See *id*.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin